### BOARD OF CONTROL OF THE MICHIGAN STATE PRISON *v.* AUDITOR GENERAL.

1. STATUTES—CONSTRUCTION—DUTY OF COURT.

   It is the duty of the courts to reconcile statutes, if possible, and to enforce them.

2. STATE PRISONS—WARDEN'S SALARY—STATUTES—CONSTRUCTION.

   Act No. 57, Pub. Acts 1907, § 20 (1 Comp. Laws 1915, § 1719), providing for the annual salary of the warden of the State prison and authorizing an increase by the board of control with the approval of the governor, does not conflict with Act No. 286, Pub. Acts 1907 (1 Comp. Laws 1915, §§ 1971-1974), providing that whenever, under the laws of the State, the "salary of any superintendent, president, secretary or any other officer, having direct executive management or control of any State institution, shall be fixed or changed by the board of control of such institution, payment thereof shall not be made until the annual or fixed salary so made shall be approved by the governor, auditor general and State treasurer, since the words "or any other officer," under the doctrine of *ejusdem generis*, should be limited to the class of officers already named.

Mandamus by the board of control of the Michigan State Prison to compel Oramel B. Fuller, auditor general, to approve certain salary vouchers. Submitted June 26, 1917. (Calendar No. 27,872.) Writ granted July 26, 1917.

*Douglas, Eaman & Barber,* for plaintiff.

*Alexander J. Groesbeck,* Attorney General, and *Clare Retan* and *L. W. Carr,* Assistants Attorney General, for defendant.

The legislature of this State at its session of 1907 passed an act known as Act No. 57 of the Public Acts of 1907 (1 Comp. Laws 1915, § 1719), which was ordered to take immediate effect, and was approved April 25, 1907. The title and body of the act are as follows:

"An act to amend section twenty of act one hundred eighteen of the Public Acts of eighteen hundred ninety-three, approved May twenty-six, eighteen hundred ninety-three, entitled 'An act to revise and consolidate the laws relative to the State prison, the State house of correction and branch of the State prison in the Upper Peninsula, and to the house of correction and reformatory at Ionia, and the government and discipline thereof, and to repeal all acts inconsistent therewith,' being section two thousand ninety-nine of the Compiled Laws of eighteen hundred ninety-seven.

"*The People of the State of Michigan enact:*

"SECTION 1. Section twenty of act one hundred eighteen of the Public Acts of eighteen hundred ninety-three, approved May twenty-six, eighteen hundred ninety-three, entitled 'An act to revise and consolidate the laws relative to the State prison, the State house of correction and branch of the State prison in the Upper Peninsula, and to the house of correction and reformatory at Ionia, and the government and discipline thereof, and to repeal all acts inconsistent therewith,' being section two thousand ninety-nine of the

Compiled Laws of eighteen hundred ninety-seven, is hereby amended to read as follows:

"Sec. 20. There shall be paid monthly at the office of each prison to the officers thereof, the following annual salaries, to wit:   To the warden, a sum not exceeding two thousand dollars; to the deputy, a sum not exceeding fifteen hundred dollars; to the clerk, a sum not exceeding one thousand dollars; to the physician, a sum not exceeding one thousand dollars;   * * *   to each of the keepers, a sum not exceeding one thousand dollars; to each of the guards, a sum not exceeding nine hundred dollars; as the board of the prison in its discretion may deem for the best interests of the prison, and all other employees of each prison shall be paid such compensation, within the limits above fixed, as said board may deem just and reasonable and shall direct:   *Provided,* That any individual salary may be increased beyond the limit named in the preceding clause by the approval of the governor.   The warden shall, in addition to his salary, be allowed the use of house, fuel, lights and provisions for his family, and for guests who visit him on business connected with the prison, and any officer may, in the discretion of the board, be allowed the use of a house or an apartment free of rent; and no officer or other person employed in or about the prison shall be permitted to receive in any way perquisites, emoluments or supplies for himself or his family from the prison, other than the compensation allowed by law. The board of the prison may, if it shall deem it for the interest of the prison, require the keepers, guards, and such of the employees as they may designate, to be lodged and messed or boarded in the prison, and for that purpose may furnish lodging rooms in a plain and substantial manner, and supply provisions from the prison stock, which shall be cooked and prepared by the labor of convicts, and served at such time and on such terms and in such place as the board may direct.

"This act is ordered to take immediate effect.

"Approved April 25, 1907."

At the same session Act No. 286 of the Public Acts of 1907 (1 Comp. Laws 1915, §§ 1971-1974), was

passed, ordered to take immediate effect, and was approved June 27, 1907. The title and body of this act are as follows:

"An act to provide for the approval and regulation of salaries fixed and allowed by the boards of control of the various State institutions.

*"The People of the State of Michigan enact:*

"SECTION 1. Whenever, under the laws of this State, the salary of any superintendent, president, secretary or any other officer, having direct executive management or control of any State institution, shall be fixed or changed by the board of control of such institution, payment thereof shall not be made until the annual or fixed salary so made shall be approved by the governor, auditor general and State treasurer.

"SEC. 2. It shall be the duty of all boards of State institutions authorized by law to fix the salary of the superintendent, president, secretary or other executive officer, to at once file with the governor and auditor general, a certified copy of the resolution of the board of control, so fixing or changing the annual or stated salary of any superintendent, president, secretary or other executive officer in the management of such institution.

"SEC. 3. It shall not be competent for the governor, auditor general and State treasurer, to change, in their discretion or judgment, any salary fixed by the board of control, but they may refuse approval until the salary shall be fixed by the board of control at an amount to meet their approval.

"SEC. 4. The stated or annual salary fixed or changed by the board of control of any State institution and approved by the governor and auditor general, and State treasurer, shall be indorsed on the resolution of the board of control, certified to the governor, and with the approval of all the officers herein specified shall be filed in the department of the auditor general.

"This act is ordered to take immediate effect.

"Approved June 27, 1907."

The facts which brought about this proceeding are thus stated in the brief of the attorney general:

"On June 6, 1916, Nathan F. Simpson was the warden of the Michigan State Prison, and was at that time, and has since August 1, 1914, received an annual salary of $5,000 per annum.  Prior to August 1, 1914, Mr. Simpson received an annual salary of $4,000 per annum.  On that date the board of control of the Michigan State Prison adopted a resolution increasing Mr. Simpson's salary from $4,000 per annum to $5,-000 per annum, which resolution was submitted to Hon. Woodbridge N. Ferris, then governor, Hon. John W. Haarer, then State treasurer, and Hon. Oramel B. Fuller, auditor general, for their approval, pursuant to the provisions of Act No. 286 of the Public Acts of 1907.  On August 6, 1915, the board of control of the Michigan State Prison passed a resolution to increase Mr. Simpson's salary from $5,000 per annum to $7,500 per annum, which resolution was presented to and approved by Hon. Woodbridge N. Ferris, then governor, and was also presented to Hon. Oramel B. Fuller, auditor general, and to Hon. John W. Haarer, then State treasurer, which resolution was in terms by them disapproved.

"Mr. Simpson continued his services as warden of the Michigan State Prison at Jackson until December 22, 1916, when his resignation, which he had previously tendered and which had been accepted by the relator, took effect.  Relator, then claiming that the method of regulating the salary of the warden of the Michigan State Prison was governed by Act No. 118 of the Public Acts of 1893, as amended by Act No. 57 of the Public Acts of 1907, caused three vouchers to be drawn, one for the sum of $2,078.80, one for the sum of $1,039.40, and one for the sum of $149.46, which amounts represented the difference between the payments actually made Mr. Simpson on the basis of $5,000 per annum and the amounts fixed in the resolution of August 6, 1915, viz., $7,500.  Checks were issued for the amounts of these vouchers, and said vouchers were presented to the respondent, who disallowed said payments and refused to approve said vouchers for the reason that so much of Act No. 118 of the Public Acts of 1893, as amended by Act No. 57 of the Public Acts of 1907, as relates to the method of regulating the salary of the warden of the Michi-

gan State Prison was superseded by Act No. 286 of the Public Acts of 1907; whereupon relator made application for a writ of mandamus to compel respondent to approve said vouchers."

KUHN, C. J. (*after stating the facts*). The sole question which this controversy presents for determination is which of the two acts passed by the legislature of 1907 controls the method of regulating the salary of the warden of the Michigan State Prison. A careful reading of both of these enactments has satisfied us that they are not inconsistent with each other, and that both can stand. It will be noticed that Act No. 57 definitely and specifically fixes a salary schedule and provides a definite method for the increase of the salary fixed. It is urged by the attorney general that the language of section 1 of Act No. 286, "or any other officer having direct executive management or control of any State institution," should be held to control and include the warden of the State prison. Nowhere in this act is the warden referred to, and, unless the language just quoted can be held to include the warden, it clearly does not apply to him. Applying the doctrine of *ejusdem generis*, we are of the opinion that the effect of the words "or any other officers" should be limited to the class of officers already named. See 36 Cyc. p. 1119. The legislature already having legislated with reference to the warden at the same session, if they intended to include "warden" in Act No. 286, they could very easily have said so. The responsibility for these statutes rests upon the legislature. The duty of the courts is to reconcile them, if possible, and to enforce them.

In giving this construction to the statutes the necessary conclusion follows that the legislature by these acts did not attempt to cover the same ground, in which particular this case can readily be distinguished from the case of *Detroit United Railway* v. *Barnes*

*Paper Co.,* 172 Mich. 586 (138 N. W. 211), and the case of *Port Huron Engine & Thresher Co.* v. *Township of Port Huron,* 191 Mich. 590 (158 N. W. 19), cited in the brief of the attorney general. It also follows that the vouchers which were presented covering the increase in salary for Nathan F. Simpson from $5,000 to $7,500 a year for the period of his services rendered, as covered by the resolution of the board of control of Michigan State prison and approved by the governor, should be paid.

As the action of the auditor general in refusing his approval to the vouchers was unquestionably caused by the uncertainty of the legislative provision, there will probably be no necessity for issuing the writ. No costs will be allowed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.