## BREMER *v.* EQUITABLE CONSTRUCTION & MORTGAGE CORPORATION

1. Corporations — Annual Report — Default — Debts — Officers' Liability.

    Under the general corporation act, before on officer can be held personally liable for debts of a corporation, it is necessary, as a condition precedent, to establish that the corporation is in default in the filing of its annual report (MCLA § 450.87).

2. Corporations—Annual Report—Default—Period of Neglect—Debts—Officers' Liability.

    Failure to file an annual report at all clearly places a corporation in default, but the crucial element for determination in fixing liability is the duration of the "period of such neglect" because officers are individually liable only for debts of the corporation contracted during this period; the period of neglect does not begin to run until May 15 of a given year.

3. Corporations—Annual Report—Default—Subsequent Filing.

    Initial default of a corporation in failing to file an annual report is not fatal, and may be corrected by a subsequent filing.

---

References for Points in Headnotes

[1–4]  19 Am Jur 2d, Corporations §§ 1354, 1365–1369, 1372, 1374.
[5, 6]  19 Am Jur 2d, Corporations §§ 174, 1385–1387, 1431.

4. Corporations—Annual Report—Purpose—Default—Officers'
   Liability.

   The purpose behind requiring a corporation to file an annual
   report is to provide a means of furnishing information to
   those who deal with a corporation and that those so dealing
   have a right to rely upon the fairness and honesty of the
   statements made therein; the default and individual liability
   of officer provisions of the general corporation act are de-
   signed to enforce such a purpose (MCLA § 450.87).

5. Corporations—Annual Report—Default—Directors—Capital
   Stock.

   An actual filing of an annual report of a corporation with sub-
   stantial error is tantamount to no filing at all; thus, in
   construing the general corporation act the omission of the
   names of directors as well as complete failure to file would
   place a corporation in default; a mistake in the amount and
   par value of capital stock, apparently clerical in nature and
   not in any way deceptive as to basic financial structure, is
   simply not in the same category.

6. Corporations—Annual Report—Default—Authorized Shares
   —Par Value.

   Annual report of a corporation substantially complied with the
   basic purposes of the filing statute, and the corporation was
   therefore not in default although the annual report listed the
   number of authorized shares of stock as 50,000 rather than
   5,000 and the par value of the stock as $1 rather than $10
   (MCLA § 450.87).

Appeal from Court of Appeals, Division 3, T. M.
Burns, P. J., and Fitzgerald and Byrns, JJ., re-
versing John T. Letts, J.   Submitted June 24, 1971.
(No. 32 June Term 1971, Docket No. 53,036.)   De-
cided November 9, 1971.

26 Mich App 204 affirmed.

Complaint by Maurice Bremer against Equitable
Construction & Mortgage Corporation and John
R. Nichols, Martin J. Nanian and Joseph Calderone,
Jr., corporate officers, for the balance due under a

contract.  Judgment for plaintiff.  Defendants
Nanian and Calderone appealed to the Court of
Appeals.  Reversed as to appellants.  Plaintiff
appeals.  Affirmed.

*Rosemary Scott,* for plaintiff.

*Stiles & Fowler,* for defendants.

T. M. KAVANAGH, C. J.  Plaintiff and the defend-
ant corporation had entered into three separate con-
tracts calling for the installation by the plaintiff
of carpeting and ceramic tile in an apartment build-
ing then under construction by the corporation.  The
contracts in question were consummated on Febru-
ary 22, 1966, March 19, 1966, and April 2, 1966,
respectively.  The cumulative value of labor and
materials furnished under these contracts was
$19,820.

Equitable paid off $10,000 of this amount by a
check tendered June 9, 1966.  Plaintiff instituted
this suit to recover the balance.

Since the corporation had filed an inaccurate
annual report for 1965[1] and did not file its 1966
report until March 8, 1967, plaintiff also sought to
establish the personal liability of the corporation's
individual officers pursuant to the Michigan General
Corporation Act.[2]

Judgment was entered in the trial court against
Equitable Construction & Mortgage, as a de facto
corporation at the time of entering into the contracts
with the plaintiff, and against Martin J. Nanian

---

[1] The 1965 annual report contained errors as to the amount and
par value of Equitable's capital stock.  It listed the number of
shares as 50,000, when the correct figure was 5,000.  Similarly, par
value was stated to be $1 per share, when it was in fact $10.
[2] MCLA § 450.87 (Stat Ann 1963 Rev § 21.87).

and Joseph Calderone, Jr., individually, as officers of the corporation.[3]   Only defendants Nanian and Calderone appealed that decision.

The Court of Appeals reversed the judgment of the trial court with respect to the personal liability of these individuals.   26 Mich App 204.

We granted leave to appeal.   384 Mich 774.

Although the parties have raised several issues, our answer to the following controls this case:

Whether the corporation was in such default under the statute as to impose contractual liability upon its individual officers?

Under § 87 of the general corporation act, before an officer can be held personally liable, it is necessary, as a condition precedent, to establish that the corporation is in default in the filing of its annual report.   Plaintiff contends that such default exists in this instance because of inadequate statutory compliance as to the 1965 and 1966 annual reports.

Considering these reports in reverse order, we note that the corporation failed to file any report for 1966 until March 8, 1967.   Failure to file at all clearly places a corporation in default.   But "the crucial element for determination in fixing liability is the duration of the 'period of such neglect' because officers are individually liable [only] for debts of the corporation contracted during this period." *Vlasic Foods Company* v. *Russek* (1969), 382 Mich 544, 555.   Because the annual report is not due to be filed until May 15th of a given year, the period of neglect does not begin to run until that time. *Vlasic, supra,* at p 555.

---

[3] Nanian and Calderone were respectively vice president and secretary of the corporation.

No service of process had been effected upon a third officer, John R. Nichols, who was president of Equitable.

Additionally, Nanian and Calderone were directors of the corporation.

Since the contracts pertinent to this suit were entered into prior to May 15, 1966, we agree with the Court of Appeals' conclusion that the failure to file the 1966 report has no bearing on the instant case. Subsequently, a finding of corporate default, if any, must be predicated upon deficiencies in the 1965 annual report.

The 1965 report was originally due to be filed on May 15, 1965, but no report was even submitted until June 22, 1965. So from the period of May 15th until June 22nd, Equitable was definitely and unquestionably in default. *Vlasic, supra,* at p 555. However, such initial default is not fatal, and may be corrected by a subsequent filing. *Industrial Coordinators, Inc.,* v. *Artco, Inc.* (1962), 366 Mich 313, 317; *Eagle Oil Corp.* v. *Cohassett Oil Corp.* (1933), 263 Mich 371, 377. This was accomplished here, of course, by the report sent on June 22, 1965. Since even the belated filing of June 22nd occurred prior to the contract dates, no question is presented here of a default based on a complete neglect to file. Instead, the issue turns upon the adequacy of the filed report, which admittedly was only deficient with respect to the amount and par value of capital stock.

The purpose behind requiring a corporation to file an annual report is to provide a means of furnishing information to those who deal with a corporation and that those so dealing have a right to rely upon the fairness and honesty of statements made therein. *Radio Electronics Supply Company* v. *Smith* (1964), 372 Mich 393; *Higgins* v. *Hampshire Products, Inc.* (1948), 319 Mich 674; *Ver Wys* v. *Vander Mey* (1919), 206 Mich 499.

The default and individual liability of officer provisions of § 87 are designed to enforce such a purpose.

Strictly viewed, the statutory language of § 87 appears to be limited in its applicability to instances where no report whatsoever is filed. However, our decisions have made it abundantly clear that an actual filing with substantial error is tantamount to no filing at all. Thus, in construing the statute we have held that the omission of the names of directors (*Radio Electronics, supra*), as well as complete failure to file (*Vlasic, supra*) would place a corporation in default. In each of those cases key information was unavailable to the other party, thereby frustrating the very purpose of the statute.

We are unable to find a similar basis for default in the present case.

In this instance we are not dealing with a situation where no report at all has been filed. Nor is there an omission of critical information.

When one deals with a corporation, especially a smaller corporation, the personal identity and reputation of an officer or director can be just as important as the corporate financial structure, since these people literally manage the business enterprise. A mistake in the amount and par value of capital stock, apparently clerical in nature, which, as demonstrated below, was not in any way deceptive as to basic financial structure, is simply not in the same category.[4]

The June 22nd report listed the number of authorized shares of stock as 50,000 rather than 5,000,

---

[4] We also distinguish this case from *Berry Door Corporation* v. *T. McDonnell, Inc.* (1953), 336 Mich 177.

In *Berry* there had been an actual decrease in the amount of capital stock, which was not reflected on the annual report. Thus, the basic financial structure had actually been altered without notice thereof being provided to the public. Such a situation clearly falls within the purview of the default provision. To impose the same penalty when a nonmisleading clerical error has been made would unjustly extend these stiff penalties to instances of innocent mistake. We cannot believe the legislature intended such a result.

and the par value of the stock as $1 rather than $10. Such a computation smacks more of unintentional mathematical error rather than shady business practice.[5] Moreover, we note that the total authorized capital was the same in any event and that the basic figures as to total dollar amount of authorized and issued shares—$50,000 and $20,000 respectively—were accurately listed on this report. All other information was correctly provided.

Under these circumstances we hold that the report substantially complied with the basic purposes of the filing statute, and that the corporation was therefore not in default.

There is an additional element in this case of bad faith resulting from the failure of Equitable to promptly respond to a letter from the Corporation Franchise Fee Division, Michigan Department of Treasury. That letter purported to inform the corporation that the 1965 annual report was unacceptable and that the corporation was subsequently in default. We have examined the letter[6] and find nothing therein that would have put Equitable on notice of such default or for the urgent need of sending a corrected report to the Franchise Fee Division of the Department of Treasury.

---

[5] An example of a well-intentioned clerical error can be seen in the Court of Appeals' opinion in this case. The Court inadvertently multiplied the incorrect amount of shares (50,000) by the correct par value ($10) to reach a figure of $500,000 total dollar amount of authorized capital stock.

[6] The entire letter reads:

"Gentlemen:

"On June 22, 1965 we received your 1965 annual report with remittance in the amount of $102.00. Our records show your authorized capital as $50,000.00 common, par value of $10.00 while item 4, page 1 of your report shows $50,000.00 common, par value of $1.00 per share. Has there been a change or is the report stated in error? Please advise. If stated in error, we request your permission to correct this item and we suggest that you correct your file copy so that this error does not recur on future reports."

The judgment of the Court of Appeals as to defendants Nanian and Calderone is affirmed. Defendants may have costs.

Black, Adams, T. E. Brennan, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.