Eugene V. KRUGH, Plaintiff-Appellee,

v.

MIEHLE COMPANY, a foreign corporation, Defendant-Appellant.

No. 73–1697.

United States Court of Appeals, Sixth Circuit.

Decided Sept. 20, 1974.

Argued Feb. 6, 1974.

**122**

Wheeler, Upham, Bryant & Uhl, by Buford A. Upham, Grand Rapids, Mich., on brief, for defendant-appellant.

Bruce M. Bieneman, Grand Rapids, Mich., for plaintiff-appellee; Cholette, Perkins & Buchanan by Grant J. Gruel, Grand Rapids, Mich., on brief.

Before CELEBREZZE and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

This is an appeal from a judgment for plaintiff entered upon a jury verdict in a diversity action for negligent design and breach of a statutory duty brought by an apprentice press assistant who lost the fingers of his right hand while cleaning transfer drums of an offset press manufactured and installed by appellant and sold to appellee's employer.

In 1967, plaintiff-appellee Eugene V. Krugh, then seventeen years old, entered the employ of the Simplicity Pattern Company in Niles, Michigan. On the evening of May 17, approximately five to six weeks after beginning his employment, Krugh, with Gerald R. Lewis, the second pressman, and Wilmer Oswalt, another employee, was working on a four color offset press manufactured by appellee and installed by it at Simplicity about a year earlier. The press was mounted on two concrete walls erected in a pit at a height to afford a clearance of approximately five feet to permit employees to work beneath the press.

The maintenance of the press required periodic manual cleaning of the transfer drums to remove accumulations of ink and dust. Cleaning was usually performed once during each shift and took from three to five minutes. The drums, large metal cylinders approximately nineteen inches in diameter and six to seven feet long, revolved in opposite directions during operation and cleaning. During cleaning the transfer drums were rotated by activating controls in the pit to expose the drum surfaces a portion at a time. When the "inch" button was pushed, the drums would rotate a short distance and stop. A "reverse" button permitted the cylinders to be moved in the opposite direction, and a "stop" button with a lock

ring enabled a worker in the pit to render the press inoperable. Gerald R. Lewis, Krugh's supervisor, testified that the procedure for cleaning the drums during his shift was to place the press on "safe" by locking the "stop" button before touching any moving parts. Lewis, as well as another Simplicity employee and Brandt, appellant's expert witness, also testified, however, that the proper cleaning procedure was to move the drums short distances with the "inch" button, clean the exposed surface with a rag and solvent, and then move the drums again to expose other portions of the surfaces. The movements of the drums were visible and audible.

On the evening in question, Lewis, who was in charge of the cleaning operation, left the floor for a moment and, according to his testimony, directed Krugh and Oswalt who were in the pit under the press not to begin cleaning until he returned. Both Oswalt and Krugh testified, however, that they did not hear this direction and that they proceeded to clean immediately. According to Oswalt, Krugh was cleaning the drums while they were continuously in motion. Krugh testified, however, that he was cleaning by periodically pushing the "inch" button in the manner already described, but that he knew that the cylinders had not completely stopped when his right hand was drawn between them and he sustained the injury. Although he admitted that he was aware of the likelihood of personal injury if his hand should be caught in the "pinch point" between the two drums, he added that he was not aware that the transfer drums would rotate as much as they did when the "inch" button was employed.

Other evidence was adduced concerning the extent to which the transfer drums might "coast" after pressing the "stop" button or after releasing the "inch" button. An employee of appellant testified that the "coast" could be as much as twenty inches after the "inch" button was released. An expert witness for Krugh testified that the "coast" could be as little as two inches

or as much as forty-five inches depending upon the speed of the drums at the time the motor was "de-energized" and that coasting after the inch button was released was "significant". No warning of the potentially hazardous coasting was ever relayed to appellee.

At the time that appellant manufactured the press that injured Krugh, there was at least one other press that had been designed to eliminate coasting. Moreover, in designing its own presses, appellant installed a barrier to protect operators from access to comparable zones of danger on the top side of the machine. Illumination of the top area of the press was excellent in contrast to the dimly lighted pit. There was also testimony that a similar safety guard on the underside of the press was practicable and would have prevented Krugh's injury.

As the result of his injury, Krugh was disabled from employment at Simplicity for three months until August 17, 1967, when he returned to work in the same capacity at the same wage. Thereafter he was employed at Simplicity at a higher wage until October 4, 1968, when he left because Saturday employment was inconsistent with his religious beliefs. At the time of trial Krugh was studying to become a nurse.

Shortly after the accident, Krugh sued the Miehle Company for breach of warranty and negligent design. The court directed a verdict for appellant on the breach of warranty claim, and submitted the case to the jury on the theories of negligent design and violation of section 15 of Act 285 of P.A. of 1909, M.S.A. § 17.25 which makes unlawful the installation of machinery without proper safeguards. The essence of Krugh's complaint was that the extent of the coasting of the drums, particularly in the dark pit, was so hazardous that a safety guard was required and that it was a hidden or latent danger that required either warnings or a safety guard or both. The jury returned a verdict for Krugh in the amount of $73,496.59.

On appeal, the Miehle Company makes four assignments of error: (1) that the district court erred in instructing the jury that M.S.A. § 17.25 was applicable in a suit brought against the manufacturer of a device by an employee of its purchaser; (2) that the district court erred in denying its motion for a directed verdict and for judgment n. o. v. because appellant breached no duty owed to Krugh and because Krugh was guilty of contributory negligence as a matter of law; (3) that the district court erred in refusing to give three requested negligence instructions; and (4) that the award of damages was excessive. We hold that the statute had no application to this case but that the district court did not err in submitting the case to the jury on the common law negligence claim and in refusing to give the requested instructions. Because a new trial is required, we do not decide whether the damage award was excessive.

M.S.A. § 17.25 (M.C.L.A. § 408.65) [1] provides:

> Machinery; safeguards; condemnation; inspection, fee

> Sec. 15. *It shall be the duty of the owner of any factory, storehouse or warehouse, or his agent, superintendent or other person in charge of the same,* to furnish or supply, or cause to be furnished or supplied, and equip all machinery in use with proper shifters or other mechanical contrivances for the purpose of throwing belts on or off pulleys. *It shall be unlawful for any person, firm, copartnership or corporation, to operate or cause to be operated, any of the machinery or equipment mentioned in this section, without it being first properly equipped with proper safety devices and guards.* All gearing and belting shall be provided with proper safeguards, and when necessary, machinery shall be provided with loose pulleys. All vats, saws, pans, planers, cogs, set screws, gearing and *machinery of every description shall be properly guarded.* The commission after hearing duly had shall have power to condemn such machinery and equipment if the same is unsafe, and stop the operation of such machinery and equipment until same be put in safe condition. *It shall be unlawful for any person, firm or corporation, or agent thereof, to install* or place in operation any of the machinery or equipment mentioned in this section unless the same be equipped with proper safeguards, or unless the same be approved by the commission or factory inspector. When requested in writing by any owner of such machinery or equipment, or agent of such owner, the commission shall within 6 days cause such machinery to be inspected. The commission, or factory inspector, as the case may be, shall determine whether such machinery or equipment is properly guarded. The findings of the commission or inspector shall be in writing and a copy shall be furnished said owner, or his agent, and a copy shall be filed in the office of the commission at Lansing. A fee of not to exceed 5 dollars may be charged for each such inspection. Such fees shall be turned into the state treasury and placed in the general fund. (emphasis added.)

Appellant contends that this statute does not apply because: (1) it imposes liability for injury caused by unguarded machinery only upon owners of specified establishments on whose premises the injury occurs and not on suppliers of machinery; and (2) presses are not among the kinds of machinery regulated.

■ Since jurisdiction is based on diversity of citizenship, we must, in construing this statute, interpret it as the Michigan Supreme Court would were this case before it; and, in so doing, we employ Michigan principles of statutory construction. Moreover, we "may [also]

---

1. This statute, enacted in 1909, was repealed by Act 282 of the Public Acts of 1967, M.S.A. § 17.49, shortly after Krugh's injury.

utilize the blessings of hindsight [in the realization that a] glance at the past will [often] reveal the considerations that led to the enactment of the legislation before us . . . . " Town & Country Motors, Inc. v. Local Union No. 328, 355 Mich. 26, 49, 94 N.W.2d 442, 454 (1959). This statute was enacted before a workmen's compensation law existed in Michigan and when lawsuits were being filed in increasing numbers by employees against their employers for injuries caused by unsafe working conditions. Within a decade, however, a workmen's compensation law was enacted in Michigan, and suits brought by employees under this statute virtually ceased.

■ Although the practical construction accorded this section by the conduct of employees for sixty years may be persuasive, it is the language of the section itself that determines whether liability extends to a manufacturer and supplier of machinery that injures an employee of its purchaser. Although this is a case in which civil liability is sought to be imposed, we observe that the statute is a penal statute and that it must therefore be strictly construed. *E. g.*, Bremer v. Equitable Construction & Mortgage Corp., 26 Mich.App. 204, 182 N.W.2d 69 (1970), aff'd, 386 Mich. 187, 191 N.W.2d 331 (1971). Moreover, we also consider the principle of *ejusdem generis*, which is especially applicable to penal statutes:

> In general, where no intention to the contrary appears, general words used after specific terms in a statute, or following an enumeration of particular classes of persons or things, are to be confined to things that are in ejusdem generis with the things previously specified, and apply only to persons or things of the same general nature as the preceding particular classes of persons or things.

21 Michigan Law and Practice, Statutes, § 90. *See also, e. g.*, Board of Control

of the Michigan State Prison v. Auditor General, 197 Mich. 377, 163 N.W. 921 (1917), McDade v. People, 29 Mich. 50 (1874).

■ The usual difficulties attending the construction of a statute are greater in this case because of the ambiguity and imprecision of the language of the section and because we have been unable to find, and the parties have not cited, any legislative history that might help us ascertain the legislative intent. The first sentence of the section imposes liability only on "the *owner* of any factory, storehouse or warehouse, or his agent, superintendent or other person in charge of the same . . . . " (emphasis added.) The second sentence refers to "any person, firm, copartnership or corporation," and the sixth, to "any person, firm, corporation, or agent thereof." Appellant argues that the entities listed in the second and sixth sentences are within the scope of the statute only if they are also owners of a factory, storehouse or warehouse. Appellee, on the other hand, would have us read the second and sixth sentences without any limitation of ownership imposed by the first. Appellee has adduced nothing that would warrant such a broad interpretation. Accordingly, we believe that in light of the problems incident to actions for injuries against factory owners at the time of the enactment of this section, it is consistent with established principles of statutory construction to read the statute as imposing liability only upon the owner (and persons under his control) of an industrial establishment where an injury occurs. And it is of no consequence whether the owner is a "person, firm, copartnership or corporation." Since we have determined that the statute is not applicable, we find it unnecessary to consider appellant's contention that offset presses are not the kinds of machinery upon which the statute requires safety devices to be placed.[2]

2. During oral argument, the court was referred to the case Hardaway v. Consolidated Paper Co., 366 Mich. 190, 114 N.W.2d 236

(1962), in which the Michigan Supreme Court held that the section of the statute at issue in this case extended to an unguarded

Appellant's contention that the district court erred in refusing to grant its motion for a directed verdict or for a judgment n. o. v. on the negligence claim, requires us to view the evidence in the light most favorable to appellee. In products liability cases in which it is alleged that an injury was caused by faulty design, liability is usually asserted on one of three theories:

(a) that the manufacturer's design has created a *concealed* or *hidden* danger; (b) that the manufacturer has failed to provide a needed or reasonably required *safety device*; or (c) that the manufacturer has used or employed material of *inadequate strength* or *quality* suitable for the intended use. Parsonson v. Construction Equipment Co., 386 Mich. 61, 64, 191 N.W. 2d 465, 466 (1971)

In this case, the first two theories are advanced. Considering the evidence, we hold that questions of fact were raised that were properly submitted to the jury.

■ The evidence demonstrated that a safety device was feasible and practicable, and it therefore became a question of fact whether appellee was negligent in failing to provide such a device. And appellant's contention that the hazard to be guarded against was obvious has little relevance to the question of the reasonableness of employing a safety device. *See, e. g.,* Coger v. Mackinaw Products Co., 48 Mich.App. 113, 210 N. W.2d 124 (1973). In that case, plain-

tiff's hand was partially amputated when a co-worker activated a mechanical log splitter that propelled a log on which plaintiff had rested his hand into the cutting edge of the machine. Although plaintiff knew of the danger of catching his hand between the wedge and the log, his knowledge did not preclude an award of damages against the manufacturer of the log splitter for failure to install a safety device that would have eliminated the hazard. Accordingly, it was proper here to submit to the jury the question whether the manufacturer discharged its "duty to use reasonable care to guard against unreasonable or foreseeable risks," and "whether as a practical matter a safety device should have been put on the product by the manufacturer"— even though appellee was aware of the danger of placing his hand in the "pinch point" between the drums. *Id.* at 122, 210 N.W.2d at 128.

■ We also hold that the evidence that the drums coasted after release of the "inch" button presented a jury question whether this tendency was a latent danger that required appropriate warnings or a safety device, and not a patent one. Parsonson v. Construction Equipment Co., *supra*. In Brynes v. Economic Machinery Co., 41 Mich.App. 192, 202, 200 N.W.2d 104, 109 (1972), the court reversed the granting of a motion for summary judgment in favor of the defendant-manufacturer and remanded for trial a case in which an employee, repairing a machine, was injured when a

ventilation fan into the blades of which plaintiff accidentally put his hand. This is an unusual case, and although it suggests that an offset press is included within the regulatory scope of the statute, we observe that it supports our determination that the legislature did not intend to make liable manufacturers bearing the kind of relationship to persons that appellant has to appellee. Thus, the court stated:

A reading of the statute does not cause us to reach the conclusion that it is so limited [to employer-employee relationships]; its protection extends to all who are legally upon the premises and imposes a duty

upon the owner of any factory, storehouse or warehouse, or its agent, superintendent or other person in charge. The statute requiring that all machinery be properly safeguarded was unquestionably designed for the protection of anyone lawfully entering or working around or about such machinery in a place covered by the statute. *Id.* at 197, 114 N.W.2d at 239.

In that case, an independent contractor was injured while he was performing work at defendant's place of business; the case holds only that liability of an owner extends not only to his own employees but also to persons who are lawfully upon his premises.

co-worker activated it. The court observed:

It is true that plaintiff was aware of the risk and that many cases find no duty where the danger is obvious. This requirement must be considered in conjunction with the modern tort concept that awareness alone does not preclude negligence. [citations omitted.] A danger may be obvious but not appreciated. [citation omitted.] Even where a danger is appreciated, circumstances may cause it to be momentarily forgotten. *Id.* at 202, 200 N.W.2d at 109.

Similarly, in Murphy v. Eaton, Yale & Towne, Inc., 444 F.2d 317 (6th Cir. 1971), an action against the manufacturer of a truck for injuries suffered when bales of hides fell from it on the driver who had overloaded the vehicle, this court, applying Michigan law, reversed summary disposition for defendant and remanded for trial the questions "whether the defect [in design alleged] was obvious or hidden, and whether plaintiff had knowledge of the danger . . . . " *Id.* at 327.

On the question of the obviousness of the claimed defect in the design of the press, plaintiff testified:

Q. When you put your right hand into position where you would have to have it to clean the transfer drums, did you believe that the cylinders were stopped at that time?

A. I didn't believe—I knew the cylinders wasn't completely stopped, but they coasted way beyond what they had. To me they felt like they coasted beyond the point they had before.

From this testimony, from testimony of expert witnesses and from that of appellant's employee, a jury could conclude that although Krugh was aware that injury could result if his hand were caught in the "pinch point", he was unaware of the propensity of the transfer drums to coast to the extent that they did. Accordingly, it could have determined that a warning or a safety device was required.

■ Although the question whether the danger was latent or patent in this case is a close one, in Michigan, " 'the doubtful case in each instance calls for jury instruction and jury verdict rather than a verdict by order of the court'." Jordan v. Whiting Corp., 49 Mich.App. 481, 495, 212 N.W.2d 324, 332 (1973) *citing* Washington v. Jones, 386 Mich. 466, 471, 192 N.W.2d 234, 237 (1971).

■ The next question is whether plaintiff's conduct constituted contributory negligence as a matter of law. In Michigan, "[t]he entry of a directed verdict in favor of a defendant which is based upon a plaintiff's alleged contributory negligence is only proper where from the evidence presented all reasonable men would agree that plaintiff was guilty of 'no care at all'." Coger v. Mackinaw Products Co., 48 Mich.App. 113, 120, 210 N.W.2d 124, 127 (1973), *citing* Normand v. Thomas Theatre Corp., 349 Mich. 50, 57, 84 N.W.2d 451, 454 (1957). *Cf.* Uren v. Toth, 5 Mich. App. 170, 146 N.W.2d 137 (1966).

Krugh testified that he, as well as others, had used the "inch" button to clean the drums, and that on the occasion of his injury, the drums appeared to "coast" further than they had done before when the "inch" button had been released. Under Michigan law, his failure to anticipate the extent of the "coast" based upon his previous experience was not so clearly negligent that the case should have been removed from the jury's consideration. Thus, in Tracy v. Finn Equipment Co., 310 F.2d 436 (6th Cir. 1962), this court affirmed a verdict for plaintiff who had been injured when he had removed by hand, material that was clogging the operation of a machine even though he was aware that removal of the debris might cause the machine to begin operating immediately and injure him. In Garfield v. Lapham, 173 Mich. 217, 139 N.W. 3 (1912), the Michigan Supreme Court found that defendant was not entitled to a directed verdict on the ground that plaintiff was guilty of contributory negligence as a matter of law in a case

where plaintiff was injured while cleaning out by hand rotating rollers of a corn-husking machine, because there was evidence that the person who had given him instructions had also used his hands in demonstrating how to clean the apparatus. Finally in Gronlie v. Positive Safety Mfg. Co., 50 Mich.App. 109, 212 N.W.2d 756 (1973), the court reversed the entry of a judgment n. o. v. that had overturned a jury award in a case where plaintiff's hands had been amputated when he placed them into a crank-driven press and the safety device designed to pull his hands back from the jaws of the press failed to operate. Observing that "the plaintiff had actual knowledge of the dangers of placing his hands in the point of operation of a press, the jury could reasonably have found that the defendant, in representing the safety device to be safe even with the operator's hands in the jaws of the press, vitiated any cautionary effect that that knowledge might otherwise have had," the court determined that there was evidence that defendant was negligent in failing to warn plaintiff that hand tools should be used to remove material from the press. Id. at 114, 212 N.W.2d at 759. Accordingly, the jury's verdict should have been permitted to stand.

Careful consideration of Michigan precedents demonstrates that cases should not be removed from jury consideration unless the evidence demonstrates with utmost clarity either that defendant breached no duty owed to plaintiff or that plaintiff exercised absolutely no care for his own safety. Accordingly, we hold that it was not error for the district court to refuse to direct a verdict for defendant or to grant a judgment n. o. v.[3]

■ The final assignment of error that we will consider is the district court's failure to give instructions requested by appellant[4] that concerned the

---

3. Appellant claims that it owes a lesser duty of care to persons repairing its machines than it owes to persons operating its machines, citing Jordan v. Whiting Corp., 49 Mich.App. 481, 212 N.W.2d 324 (1973). However, in that case, although the court recognized that a person making repairs necessarily exposes himself to dangers to which operators would not ordinarily be exposed and that there may, therefore, be cases in which the latter but not the former could recover for injuries sustained, it was unwilling to fashion an inflexible rule. Instead, the court stated:

> We think we must revert to the long-standing legal principle . . . that when the minds of reasonable men cannot differ the question is one of law for the court and will require a purely legal determination. Where the facts adduced may fairly be said to support differing conclusions or inferences the question must be submitted to the trier of the facts be it jury or court sitting without a jury. Id. at 492, 212 N.W.2d at 331.

We believe that the district court's instructions fairly stated Michigan law in this respect, and we are doubtful that the required frequency of cleaning of the drums can be considered repair of the machine instead of just part of its operation.

4. The requested instructions that the district court refused to give are as follows:

INSTRUCTION NO. 14C
(Filed March 31, 1972)

You are further instructed that it is not of itself negligence to use a particular design or method in the manufacture or handling of a product or doing a job which is reasonably safe and in customary use in the industry, although other possible designs whether in use in the industry or not, might be conceived which would be safer.

INSTRUCTION NO. 14D
(Filed March 31, 1972)

Members of the Jury, plaintiff in this case claims that defendant is liable to him for negligence for failing to use reasonable care in designing the printing press on which he was injured. You are instructed that defendant did not have a duty to design a machine which was accident-proof or fool-proof or which was free of open danger. It did, however, have a duty to use reasonable care in designing a machine which was free of hidden or concealed dangers.

In considering the question of negligence in design in this case, you must evaluate the nature of the hazard or danger which this machine presented to Mr. Krugh, and you must determine whether or not that danger or hazard would have been open and apparent to a reasonably prudent person, or whether it would have been hidden from a reasonably prudent person. If you find that the danger of having one's hand

standard to be applied in determining whether a defect in design caused the injury complained of and whether the defect, if it existed, was latent or pat-

caught in the press was hidden or latent and not apparent to a reasonably prudent person and the plaintiff was not aware of such danger, then the defendant was guilty of negligence by designing the press.

If, on the other hand, you find that the danger of having one's hand caught in the press was or should have been apparent to a reasonably prudent person, or that the plaintiff was aware of such danger, then the defendant was not guilty of negligence in designing the press.

*INSTRUCTION NO. 14E*
(Filed March 31, 1972)

Members of the Jury, the plaintiff in this case claims that the defendant is liable to him for negligence for failing to provide adequate guards on the printing press to prevent his injury. This claim is similar to his claim that the defendant did not use reasonable care in designing the press. You are instructed that the defendant did not have a duty to provide a machine which was accident-proof or fool-proof or which was free of open danger, and that it, likewise, had no duty to provide guards against dangers which were or should have been apparent to a reasonably prudent person. The defendant did, however, have a duty to use reasonable care to provide guards against injury from hidden or concealed dangers.

In considering the plaintiff's claim of negligence for failure to provide adequate guards in this case, you must also evaluate the nature of the hazard or danger which this press presented to Mr. Krugh. You must determine whether or not that hazard or danger would have been open and apparent to a reasonably prudent person, or whether it would have been hidden from a reasonably prudent person. If you find that the danger of having his hand caught in the press was hidden or latent and not apparent to a reasonably prudent person, and that the plaintiff was not aware of such a danger, you may consider this as evidence of negligence for failing to provide proper guards on the press. You must then consider whether or not such negligence was the proximate cause of plaintiff's injury, and whether or not plaintiff was guilty of contributory negligence.

If, on the other hand, you find that the danger of having one's hand caught in the press was or should have been apparent to a reasonably prudent person, or that the plaintiff was aware of such danger,

ent. Although the requested instructions may have stated the relevant law with greater particularity than did the instructions given by the district court,[5]

then the defendant was not guilty of negligence for failing to provide adequate guards on the press.

5. The relevant portion of the instructions actually given by the district court is as follows:

A manufacturer or seller is not required to guarantee that his product is incapable of doing harm and thus the mere happening of an accident creates neither a presumption of liability nor of non-liability on the part of the manufacturer because of the accident. The law does not require that a manufacturer produce a product which is accident-free or fool-proof. What the law does require is that the defendant have exercised that ordinary care in design, manufacture and sale of the printing press which a reasonably careful manufacturer of like products would have exercised under the same or similar circumstances as you find existed in this case at the time of the sale and delivery of the printing press to Simplicity Pattern Company which is involved here.

A manufacturer, such as Miehle Company here, who knows or should reasonably have known of a latent—and by that I mean a hidden, unobvious or unapparent danger to the user of his product has a duty to adequately guard against such danger where feasible, or absent such guarding, to adequately warn expected users of its products of such dangers, and such a duty exists even if only a few users might be affected by the hazard. Such a failure to guard or to give effective warnings would be negligence if you find that a reasonably and ordinarily careful manufacturer of printing presses would have so guarded or so warned under the circumstances which you find existed in this case.

There is, however, no duty to warn against hazards or dangers which are, or should be obvious to everyone or where the user has actual knowledge of them.

In considering what a reasonably careful manufacturer would have done or would not have done, you may consider the state of the art at the time, and the state of the science and engineering information available at the time of the sale and delivery of the machine. You may consider the customs and the usages and practices existent at the times as shown by the evidence, and as bears upon the defendant's knowledge of the anticipated use of the

**130**

the instructions that were given stated properly applicable legal principles and discussed the points emphasized by appellant's requested instructions. Accordingly, there was no error committed when the district court refused to give the requested instructions.

Reversed and remanded for a new trial.

printing machine. You may consider what a reasonably careful manufacturer at the time would have anticipated in terms of the skill or lack of it on the part of the employees using the machine. You may consider what the manufacturer would have anticipated in terms of training, and instruction and supervision or lack of it which could have been expected to be afforded by the employer. You may consider whether or not a guard or a different braking device would have been feasible. You may consider whether a warning, if given, would or would not have been heeded. You may consider whether the danger of getting one's fingers caught in the drums was obvious or apparent, or whether the coasting of the drums after shutting the power off, if you find this to have occurred, was unapparent or apparent. You may consider whether or not the work involved was tedious, giving rise to foreseeable human inattentiveness.

You are to bear in mind that what we are talking about here is neither an extraordinarily cautious manufacturer nor an extraordinarily cautious employee or user, and that the standard you are to apply is in each instance that of reasonable and ordinary care.