# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## BATISTA v OFFICE OF RETIREMENT SERVICES

Docket No. 166305. Argued on application for leave to appeal April 16, 2024. Decided July 30, 2024.

Patricia Batista, David Britten, Timothy Donohue, and others brought an action in the Court of Claims against the Office of Retirement Services (ORS), alleging, among other things, that the ORS had violated the Public School Employees Retirement Act (the Retirement Act), MCL 38.1301 *et seq.*, when it used salary schedules that it had created in order to determine plaintiffs' retirement allowances or pension payments. Plaintiffs were current or retired public school superintendents and administrators who worked under personal employment contracts rather than collective-bargaining agreements (CBAs). Under the Retirement Act, pension payments to certain public school employees, including superintendents and administrators, are calculated using a formula set forth in MCL 38.1384(1) that includes an employee's years of credited service and their "final average compensation." The Retirement Act provides that an employee's compensation generally includes salary and wages but, under MCL 38.1303a(3)(f), does not include annual pay increases beyond those provided in the "normal salary schedule" for the current job classification. MCL 38.1303a(3)(f) also provides that if the current job classification in the reporting unit has fewer than three members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units is to be used. To determine whether compensation was excluded under MCL 38.1303a(3)(f) when calculating an employee's final average compensation, the ORS used a formula in a manual it prepared annually that included normal salary increase (NSI) schedules for superintendents and administrators. Plaintiffs in this case received annual increases in compensation, but the ORS did not include all of these increases when calculating plaintiffs' final average compensation under the NSI schedules to determine the amount of their pensions. As a result, plaintiffs filed this action, arguing, in part, that the Retirement Act did not authorize the ORS to create the NSI schedules and apply them to plaintiffs. Defendants moved for summary disposition. The Court of Claims, CHRISTOPHER M. MURRAY, J., granted defendants' motion except with respect to plaintiffs' claim alleging a violation of the Administrative Procedures Act (APA), MCL 24.201 *et seq.* The parties subsequently filed cross-motions for summary disposition of the APA claim, and the Court of Claims granted defendants summary disposition of this claim as well. Plaintiffs appealed. The Court of Appeals, FORT HOOD, P.J., and MARKEY and GLEICHER, JJ., reversed and remanded the case to the Court of Claims for entry of judgment in favor of plaintiffs, holding that the ORS does not have statutory authority under the Retirement Act to create NSI schedules and that the

schedules were therefore invalid. The Court of Appeals also held that MCL 38.1303a(3)(f) does not govern public school employees who, like plaintiffs, work under personal employment contracts rather than CBAs. 338 Mich App 340 (2021). Defendants sought leave to appeal in the Supreme Court, which affirmed the Court of Appeals' holding that ORS lacks the authority to create and implement its own NSI schedules, reversed the Court of Appeals' holding that MCL 38.1303a(3)(f) does not govern public school employees who work under personal employment contracts rather than CBAs, vacated the inconsistent parts of the Court of Appeals judgment, and remanded the case to the Court of Appeals to address how MCL 38.1303a(3)(f) applies to public school employees who do not work pursuant to CBAs and to further address how the holding affected plaintiffs' claims in this case. 511 Mich 973 (2023). On remand, the Court of Appeals, GLEICHER, C.J., and MARKEY and LETICA, JJ., again reversed the Court of Claims' judgment. The Court of Appeals held that because plaintiffs were not subject to normal salary schedules for current job classifications, the exception to the exclusion in the first sentence of MCL 38.1303a(3)(f) did not apply, meaning that annual increases in compensation could not be included in the calculation of their retirement allowance. The Court of Appeals then explained, however, that if any of the plaintiffs fell within the ambit of the second sentence of MCL 38.1303a(3)(f), which pertains to job classifications that have fewer than three members, they must be "shoehorned" into an existing normal salary schedule, thus creating a possibility that some if not all of their annual compensation increases could be included when calculating their final average compensation. The Court of Appeals noted that it was constrained by the statutory language, recognized the unfairness of the result, and implored the Legislature to address the flaws in the statutory language. ___ Mich App ___ (2023) (Docket No. 353832). Plaintiffs sought leave to appeal in the Supreme Court, which ordered oral argument on the application and directed the parties to address whether the phrase "normal salary schedule" in MCL 38.1303a(3)(f) refers only to a provision contained in a CBA and, if not, from what other source a "normal salary schedule" may be derived. 513 Mich 1008, 1008 (2024).

In an opinion by Justice WELCH, joined by Justices VIVIANO, BERNSTEIN, and CAVANAGH, the Supreme Court *held*:

The term "normal salary schedule" is a (1) written document (2) established by statute or approved by a reporting unit's governing body (3) that indicates the time and sequence of compensation, and (4) conforms to a norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee. The phrase "normal salary schedule" is not a term of art that refers only to employees operating under a CBA. Public school employees may have a normal salary schedule regardless of whether they are employed under a CBA or a personal employment contract. The Court of Appeals' holding that plaintiffs work under personal employment contracts and were not subject to normal salary schedules for current job classifications was vacated. Although plaintiffs do not work under CBAs, the record was insufficient to determine whether they were otherwise subject to a normal salary schedule as defined in the majority opinion. For job classifications that have fewer than three members, MCL 38.1303a(3)(f) authorizes ORS to look outside the relevant school district when necessary to find the most nearly identical job classification in the reporting unit or in similar reporting units. The case was remanded to the Court of Claims for further proceedings.

1.  In general, under MCL 38.1384(1), when a member retires from service, they receive a retirement allowance that equals the product of their total years, and fraction of a year, of credited service multiplied by 1.5% of their final average compensation.  The Retirement Act defines a "member" as, with some exceptions, a public school employee.  A member's "final average compensation" is defined under MCL 38.1304(12) as, in relevant part, "the aggregate amount of a member's compensation earned within the averaging period in which the aggregate amount of compensation was highest divided by the member's number of years, including any fraction of a year, of credited service during the averaging period."  "Compensation" generally means the remuneration earned by a member for service performed as a public school employee and includes salary and wages under MCL 38.1303a(1) and (2).  However, MCL 38.1303a(3) excludes certain types of remuneration from the definition of "compensation."  Relevant to this case, MCL 38.1303a(3)(f) excludes compensation "in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification" and specifies that in cases where the current job classification in the reporting unit has fewer than three members, "the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used."  The Court of Appeals correctly held that MCL 38.1303a(3)(f) applies to all members regardless of whether the member is employed pursuant to a CBA or a personal employment contract.  It also correctly held that, for annual compensation increases to count toward the final average compensation, the increase must be provided for in a "normal salary schedule."

2.  The term "normal salary schedule" is not defined in the Retirement Act, and it had not previously been defined by Michigan's appellate courts.  It was therefore appropriate to consult a lay dictionary that was contemporaneous with the statute's enactment.  In *Merriam-Webster's Collegiate Dictionary* (8th ed), the contextually appropriate definition of "normal," for purposes of MCL 38.1303a(3)(f), was "according with, constituting, or not deviating from a norm, rule, or principle: REGULAR"; the definition of "salary" was "fixed compensation paid regularly for services"; and "schedule" was variously defined as "a written document," "a statement of supplementary details appended to a legal or legislative document," "a written or printed list," or a "timetable."  Both the Legislature and Michigan's appellate courts have indicated that in the context of public employment, a "salary schedule" may be set by statute or by the relevant governing body.  Further, a consideration of the statutory context indicated that the Legislature viewed "normal salary schedule" as referring to a generally applicable salary schedule for employees in a "job classification" and not to a salary schedule that is applicable only to a particular employee, meaning that the term applies to positions rather than to people.  Therefore, in the context of the Retirement Act, a "normal salary schedule" is a (1) written document, (2) established by statute or approved by a reporting unit's governing body, (3) that indicates the time and sequence of compensation, and (4) conforms to a norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee.

3.  The phrase "normal salary schedule" is not a term of art that refers only to employees operating under a CBA.  Although Michigan cases have used the terms "salary schedule" and "job classification" in the context of CBAs, the fact that such terms may be and often are included in a CBA does not mean that the Legislature intended such terms to refer only to CBAs. Other sources of Michigan law have used the term "salary schedule" outside the CBA context, and several statutes refer to a "job classification" without a clear reference to collective bargaining.  In

addition, other jurisdictions have used the term "salary schedule" outside of CBAs. Additional considerations suggest that "normal salary schedule" was not used as a term of art in the statute, including the fact that no Michigan statute or court decision has defined the term and the term is not included in *Black's Law Dictionary*. In sum, there was nothing in MCL 38.1303a(3)(f), the Retirement Act broadly, other Michigan statutes, or Michigan caselaw to suggest that the Legislature intended "normal salary schedule" to apply exclusively to public school employees working under a CBA, as the Supreme Court had already held in this case. MCL 38.1303a(3)(f) clearly provided that yearly salary increases are not considered compensation unless they are "provided by the normal salary schedule for the current job classification," meaning that those who do not fall within the second sentence of that provision (i.e., employees in a job classification of three or more employees) must have a normal salary schedule in order to count salary increases as part of their "final average compensation." If only a CBA could include a "normal salary schedule" under MCL 38.1303a(3)(f), then employees working under personal employment contracts would never be entitled to credit for salary increases, and nothing in the statutory scheme indicated that the Legislature intended such a result.

4. The Court of Appeals' reversal of the Court of Claims' judgment was affirmed, but its analysis was reversed or vacated in several respects. First, contrary to the Court of Appeals' analysis, public school employees may have a normal salary schedule regardless of whether they are employed under a CBA or a personal employment contract. Second, the Court of Appeals' holding that "plaintiff members work under personal employment contracts and are not subject to anything that could reasonably be construed or described as normal salary schedules for current job classifications" was vacated. Although plaintiffs do not work under CBAs, the record was insufficient to determine whether they are otherwise subject to a normal salary schedule. Third, for cases where the current job classification in the reporting unit has fewer than three members, MCL 38.1303a(3)(f) authorizes ORS to look outside the relevant school district when necessary to find the most nearly identical job classification in the reporting unit or in similar reporting units. Reading the statute in this way was textually sound and prevented the unfairness identified by the Court of Appeals.

Affirmed in part, reversed in part, vacated in part, and remanded to the Court of Claims for further proceedings.

Chief Justice CLEMENT, joined by Justice BOLDEN, concurring *dubitante*, stated that she was not completely comfortable with defining "normal," "salary," and "schedule" in isolation and then putting the pieces together to define the phrase "normal salary schedule." She would have read "normal salary schedule" in MCL 38.1303a(3)(f) as one phrase that should, ideally, be defined in its entirety. Nevertheless, she could locate no useful definitions of "normal salary schedule" as one phrase taken as a whole, and, assuming the phrase could be defined by combining the definitions of its individual words, she found the majority's statutory interpretation persuasive. Additionally, she was hesitant to rely on the sources the majority cited that apparently referred to salary schedules in a context not involving a CBA. She noted that none of the sources used the whole phrase "normal salary schedule," and the sources were not completely clear that the employees to which the salary schedule applied did not have a CBA. Nevertheless, she agreed with the majority that finding no example of "normal salary schedule" used outside the CBA context does not necessarily indicate that "normal salary schedule" can be used only in the CBA

context, and she had found no definition of "normal salary schedule" explicitly stating that the term is inextricably linked to a CBA. Ultimately, she concurred with the majority opinion because it provided guidance on how to calculate the retirement allowance for public school employees under personal employment contracts, and she did not wish to perpetuate confusion and unfairness when she was not certain that the majority was wrong. She encouraged the Legislature to amend the statute in order to clarify the definition of "normal salary schedule," particularly whether a normal salary schedule can exist outside the CBA context.

Justice CAVANAGH, joined by Justice WELCH, concurring, agreed in full with the majority opinion, but wrote separately to summarize the current state of the public school employees' retirement system and to urge the Legislature to revisit the governing statutory scheme to ensure that the retirement allowances of public school employees were consistent with the reasonable expectation that their pensions would fairly reflect compensation earned during their careers. She noted that it is yet to be determined how the change in the status quo wrought by this litigation will apply to work that occurred before these decisions were rendered, including how the Court's decisions in this case will affect the retirement allowances of public school employees who previously worked without an applicable "normal salary schedule." Moreover, she urged the Legislature to assess, among other things, (1) the appropriate definition of "normal salary schedule," (2) how to calculate the retirement allowances for employees who relied on the now-invalidated NSI schedules and did not have an applicable normal salary schedule during prior years of employment, and (3) the requirement in MCL 38.1303a(3)(f) that retirement credit for employees in a job classification with fewer than three members be determined on the basis of a normal salary schedule created for a different job classification.

Justice ZAHRA, dissenting, noted that the majority opinion went beyond the Court of Appeals' holding to define "normal salary schedule," and he questioned the Court's decision to establish a final, authoritative interpretation of this phrase without the benefit of the lower courts' wisdom, given the complexity of the issue presented. He also raised several concerns with the definition the majority chose, noting that it did not include the full definition of "salary," which is not merely "compensation" but compensation that is "fixed" or "paid regularly"; that it included two definitions of "schedule" without explaining why two definitions were needed for one word; and that it did not explain which word in the phrase "normal salary schedule" indicates that it must be "established by statute or approved by a reporting unit's governing body." He expressed concern that the majority's definition of "normal salary schedule" contained traps and flaws that were not immediately apparent. He would have deferred offering an authoritative construction of "normal salary schedule" until after the Legislature had an opportunity to amend MCL 38.1303a(3)(f) or, if the Legislature declined to do so, until the lower courts had a reason and opportunity to develop the issue.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 30, 2024

S T A T E   O F   M I C H I G A N

SUPREME COURT

PATRICIA BATISTA, DAVID BRITTEN,
TIMOTHY DONAHUE, AARON
GAFFNEY, JOHN HEWITT, RONALD
KOEHLER, AMY SWANTEK, CHRIS
THOMSON, and MICHIGAN
ASSOCIATION OF SUPERINTENDENTS
AND ADMINISTRATORS,

      Plaintiffs-Appellants,

v                            No. 166305

OFFICE OF RETIREMENT SERVICES,
MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC EMPLOYEES
RETIREMENT SYSTEM BOARD,
PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD
MEMBERS, and EXECUTIVE DIRECTOR
OF RETIREMENT SERVICES,

      Defendants-Appellees.

BEFORE THE ENTIRE BENCH

WELCH, J.

This case concerns the Public School Employees Retirement Act, MCL 38.1301 *et seq*. (the Retirement Act). The issue is what salary increases are used to calculate the retirement allowance of public school employees who work under personal employment contracts rather than under collective bargaining agreements (CBAs). For the reasons set forth in this opinion, we affirm in part, reverse in part, and vacate in part the Court of Appeals' judgment. In so doing, we define the term "normal salary schedule" as a (1) written document (2) established by statute or approved by a reporting unit's governing body (3) that indicates the time and sequence of compensation, and (4) conforms to a norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee. We remand to the Court of Claims for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiffs are current or retired public school superintendents and administrators who work or worked under personal employment contracts, not CBAs. Under the Retirement Act, pension payments to certain public school employees, including superintendents and administrators, are calculated using a formula that includes an employee's years of credited service and, relevant here, their "final average compensation." MCL 38.1384(1). The issue in this case is whether certain compensation increases are included when calculating the "final average compensation" to determine the retirement allowance.

2

The Retirement Act provides that an employee's "compensation" generally "means the remuneration earned by [the] member for the service performed as a public school employee," MCL 38.1303a(1), and includes "salary and wages," MCL 38.1303a(2). However, not all "compensation" is reportable for the purpose of calculating an employee's final average compensation. See MCL 38.1303a(3) (providing specific exclusions to the definition of "compensation"). Pertinent to this case, MCL 38.1303a(3)(f) provides that compensation under the Retirement Act does not include:

> Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification. In cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used.

The Retirement Act does not define "normal salary schedule," and we have not had an opportunity to interpret the phrase.

The Office of Retirement Services (ORS) administers the retirement system. Each year, ORS prepares the Reporting Instruction Manual (the Manual), which is designed to ensure the accuracy of account information and pension payments for employees. The Manual states that it is a summary of basic plan provisions found in the Retirement Act and that the Retirement Act governs if there are any discrepancies between the Retirement Act and the Manual. Beginning as early as 2004, ORS started to create normal salary increase (NSI) schedules for superintendents and administrators, which it later began including in the Manual.

The NSI schedules set forth annual allowable compensation increase percentages. ORS based these schedules on the statewide average salary increase percentages for a job

3

classification and then doubled that number to establish the applicable NSI percentage tables. Yearly compensation increases at or below a particular enumerated percentage constituted reportable compensation that were used to calculate a member's final average compensation. But annual compensation increases above that percentage were considered nonreportable compensation that was excluded when calculating the final average compensation. Plaintiffs in this case received annual increases in compensation, not all of which ORS used to calculate their final average compensation under the NSI schedules. Thus, a portion of plaintiffs' respective pay increases did not factor into their pensions.

Plaintiffs commenced this action in the Court of Claims. In their amended complaint, they asserted, among other things, that the Retirement Act does not authorize ORS to create the NSI schedules and apply them to plaintiffs. Through two separate and extensive orders, the Court of Claims rejected plaintiffs' arguments and granted defendants' motion for summary disposition.

The Court of Appeals, in a published opinion, reversed and remanded the case to the Court of Claims for entry of judgment in favor of plaintiffs. *Batista v Office of Retirement Servs*, 338 Mich App 340; 980 NW2d 107 (2021), aff'd in part, rev'd in part, and vacated in part 511 Mich 973 (2023). The Court of Appeals held that ORS does not have statutory authority under the Retirement Act to create NSI schedules and that the schedules were therefore invalid. The Court of Appeals also held that MCL 38.1303a(3)(f) does not govern public school employees who, like plaintiffs, work under personal employment contracts.

Defendant sought leave to appeal in this Court and, following oral argument, we affirmed in part and reversed in part. *Batista v Office of Retirement Servs*, 511 Mich 973

4

(2023). In our order, we affirmed the Court of Appeals' holding that ORS lacks the authority to create and implement its own NSI schedules. However, we reversed the Court of Appeals' holding that MCL 38.1303a(3)(f) does not govern public school employees who work under personal employment contracts rather than CBAs. We therefore vacated elements of the Court of Appeals' analysis that were inconsistent with our order. We then remanded the case to the Court of Appeals to address how MCL 38.1303a(3)(f) applies to public school employees who do not work pursuant to CBAs and to further address how our holding affects plaintiffs' claims in this case.

On remand, the Court of Appeals once again reversed the Court of Claims' judgment. *Batista v Office of Retirement Servs (On Remand)*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 353832). The Court of Appeals observed that, under the exception to "compensation" in MCL 38.1303(3)(f), "[a]ny increase in annual compensation is not includable in calculating a retirement allowance *except* when the increase is reflected in 'the normal salary schedule for the current job classification.' " *Id*. at ___; slip op at 5. The panel held that plaintiffs "are not subject to anything that could reasonably be construed or described as normal salary schedules for current job classifications." *Id*. at ___; slip op at 5-6. Thus, the panel held that the exception to the exclusion "in the first sentence of MCL 38.1303a(3)(f) for 'increases provided by the normal salary schedule for the current job classification' does not apply, effectively meaning that annual increases in compensation cannot be included in the calculation of a member's retirement allowance." *Id*. at ___; slip op at 6. The Court of Appeals then explained, however, that its analysis changes when "construing the second sentence of MCL 38.1303a(3)(f), which is triggered when, within a particular reporting unit, a member

5

works in a job classification that has fewer than three members." *Id*. at ___; slip op at 6. The Court of Appeals reasoned:

> In that situation, a "normal salary schedule" must be utilized, and it is entirely irrelevant whether the member works under a personal employment contract or does not otherwise work pursuant to a "normal salary schedule." The Legislature appears to have assumed that a member falling within the parameters of the second sentence of MCL 38.1303a(3)(f) would not be covered by his or her own "normal salary schedule." The retirement allowance for these members is calculated using "the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units . . . ." MCL 38.1303a(3)(f). *Therefore, if plaintiff members fall within the ambit of the second sentence of MCL 38.1303a(3)(f), they must be shoehorned into an existing normal salary schedule.* And when they receive annual increases in compensation, there is at least a possibility of including some if not all of the increases in calculating a final average compensation, unlike those plaintiff members who fit within the first sentence of MCL 38.1303a(3)(f). [*Id*. at ___; slip op at 6 (emphasis added)].

The Court of Appeals "recognize[d] the unfairness produced by [its] construction of the two distinct provisions in MCL 38.1303a(3)(f) . . . ." *Id*. at ___; slip op at 6. However, "given the language of MCL 38.1303a(3)(f)" and this Court's prior order, the panel held that it had "no choice in reaching [its] conclusion because [it] may not legislate from the bench[.]" *Id*. at ___; slip op at 6. The panel then "implore[d] the Legislature to address the patent flaws in the statutory language." *Id*. at ___; slip op at 6. This appeal followed.

We ordered oral argument on plaintiffs' application for leave to appeal and directed the parties to address: "(1) whether the phrase 'normal salary schedule' in MCL 38.1303a(3)(f) refers only to a provision contained in a collective-bargaining agreement; and (2) if not, from what other source may a 'normal salary schedule' be derived." *Batista v Office of Retirement Servs*, 513 Mich 1008, 1008 (2024).

6

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We also review de novo questions of statutory interpretation. *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231; 931 NW2d 571 (2019).

## III. DISCUSSION

The "Michigan public school employees' retirement system [was] created for the public school employees of this state." MCL 38.1321. The retirement system is intended to "be a qualified pension plan created in trust under section 401 of the internal revenue code, 26 USC 401 . . . ." MCL 38.1408(1). In general, "upon [a] member's retirement from service . . . , a member shall receive a retirement allowance that equals the product of the member's total years, and fraction of a year, of credited service multiplied by 1.5% of the member's final average compensation." MCL 38.1384(1).[1] A member's "final average compensation" is defined, in part, as "the aggregate amount of a member's compensation earned within the averaging period in which the aggregate amount of compensation was highest divided by the member's number of years, including any fraction of a year, of credited service during the averaging period." MCL 38.1304(12).

---

[1] A "member" is, with some exceptions, "a public school employee." MCL 38.1305(1). There is no dispute that the individual plaintiffs are members. The term "retirement allowance" is defined as "a payment for life or a temporary period provided for in this act to which a retirant, retirement allowance beneficiary, or refund beneficiary is entitled." MCL 38.1307(5).

7

"When interpreting a statute, 'our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language.' " *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018), quoting *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014). " 'In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.' " *Pinkney*, 501 Mich at 268, quoting *Madugula*, 496 Mich at 696. When an undefined statutory term is a legal term of art, the term "must be construed in accordance with its peculiar and appropriate legal meaning." *Iliades v Dieffenbacher North America Inc*, 501 Mich 326, 336; 915 NW2d 338 (2018). "When statutory language is clear and unambiguous, we assume that the Legislature intended its plain meaning and we enforce the statute as written." *People v Miller*, 498 Mich 13, 23; 869 NW2d 204 (2015), citing *Madugula*, 496 Mich at 696.

Recall that "compensation" generally "means the remuneration earned by a member for service performed as a public school employee" and includes "salary and wages." MCL 38.1303a(1) and (2). The Retirement Act also excludes the following types of remuneration from the definition of "compensation":

(a) Payments for unused sick or annual leave.

(b) Bonus payments.

(c) Payments for hospitalization insurance and life insurance premiums.

(d) Other fringe benefits paid by and from the funds of employers of public school employees.

(e) Remuneration paid for the specific purpose of increasing the final average compensation.

(f) Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by

8

the normal salary schedule for the current job classification. In cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used. [MCL 38.1303a(3)].[2]

This case involves interpretation of the final subsection, MCL 38.1303a(3)(f).

As a threshold matter, we agree with the Court of Appeals that MCL 38.1303a(3)(f) applies to all members regardless of whether the member is employed pursuant to a CBA or a personal employment contract. We also agree that, for annual compensation increases to count toward the final average compensation, the increase must be provided for in a "normal salary schedule."

## A. NORMAL SALARY SCHEDULE

The Court of Appeals declined to define "normal salary schedule" when interpreting MCL 38.1303a(3)(f). Yet the Court of Appeals held that, whatever that term may mean, plaintiffs "are not subject to anything that could reasonably be construed or described as normal salary schedules for current job classifications." *Batista (On Remand)*, ___ Mich App at ___; slip op at 5-6. Because the term is essential to understanding the statute, we define the term in this opinion.[3]

---

[2] MCL 38.1303a(5)(a) and (b) provide that the retirement board, based on information and documentation provided by a member, shall determine "[w]hether any form of remuneration paid to a member is identified in this section" and "[w]hether any form of remuneration that is not identified in this section should be considered compensation reportable to the retirement system under this section." In cases "where a petitioner seeks to have remuneration included in compensation reportable to the retirement system, the petitioner shall have the burden of proof." MCL 38.1303a(6).

[3] The dissent argues that we go "beyond the Court of Appeals' holding to define the phrase 'normal salary schedule.'" We disagree. The Court of Appeals interpreted the phrase in its initial opinion. See *Batista*, 338 Mich App at 358 ("We find it abundantly clear from the Legislature's references to 'the' normal salary schedule and 'the' current job

9

When, as in this case, there is no statutory definition for a term, we frequently consult lay dictionaries as a starting point in determining a term's plain meaning. See *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008); see also *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 513; 821 NW2d 117 (2012) (" 'Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.' ") (citation omitted). "Courts should ordinarily use a dictionary that is contemporaneous with the statute's enactment." *Sanford v Michigan*, 506 Mich 10, 21 n 19; 954 NW2d 82 (2020), citing *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 n 58; 886 NW2d 113 (2016). One contextually appropriate definition of "normal," for purposes of MCL 38.1303a(3)(f), is "according with, constituting, or not

---

classification that the Legislature was necessarily alluding to schedules and classifications that were familiar to school personnel and already in place in the particular contextual setting of collective bargaining. The references to 'normal salary schedule' for a 'job classification' plainly pertain to salary schedules contained in collective-bargaining agreements."). Although our prior order vacated that portion of the opinion, we remanded this case to the Court of Appeals "to address how MCL 38.1303a(3)(f) applies to public school employees who do not work pursuant to collective bargaining agreements and to further address how this holding affects plaintiffs' claims in this case." *Batista*, 511 Mich at 974.

On remand, the Court of Appeals declined to expressly define "normal salary schedule," but it necessarily applied that phrase when it concluded that plaintiffs are not subject to a normal salary schedule. We then granted leave, directing the parties to address the meaning of the phrase "normal salary schedule." Thus, the meaning of the phrase has long been a focus of this litigation, and this Court received full briefing on the issue. We must therefore define the phrase so that we may properly review whether the Court of Appeals reached the correct conclusion. Although we could, of course, remand again to the Court of Appeals to more clearly articulate the definition that it applied on remand, we agree with Justice CAVANAGH that there is no rule or compelling reason to delay resolution of this issue.

10

deviating from a norm, rule, or principle: REGULAR." *Merriam-Webster's Collegiate Dictionary* (8th ed). That same dictionary defines "salary" as "fixed compensation paid regularly for services." *Id*. Finally, a "schedule" can be "a written document," "a statement of supplementary details appended to a legal or legislative document," "a written or printed list," or a "timetable." *Id*.

Beyond dictionaries, we look to our caselaw and other sources of Michigan law. Neither the Legislature nor this Court have ever defined "normal salary schedule." However, both have indicated that in the context of public employment, a "salary schedule" may be set by statute or by the relevant governing body. See, e.g., *Bischoff v Wayne Co*, 320 Mich 376, 392; 31 NW2d 798 (1948) (citing a civil service regulation referring to a "salary schedule" created by the Civil Service Commission); *Bd of Control of Mich State Prison v Auditor General*, 197 Mich 377, 382; 163 NW 921 (1917) (referring to a "salary schedule" fixed by statute); *Robins v Wayne Co*, 335 Mich 41, 43; 55 NW2d 166 (1952) (referring to "the salary schedule and salary plan of Wayne county adopted by the Wayne county board of supervisors"); MCL 600.8273, as added by 1980 PA 438 (tying certain employees' compensation to "a classification and salary schedule developed by the state judicial council").

Finally, we examine the statutory context when defining "normal salary schedule." See *Pinkney*, 501 Mich at 268. The first sentence of MCL 38.1303a(3)(f) refers to the "normal salary schedule *for the current job classification*." MCL 38.1303a(3)(f) (emphasis added). It is clear, therefore, that the Legislature viewed a "normal salary schedule" as referring to a generally applicable salary schedule for employees in a "job classification"

11

and not to a salary schedule that is applicable only to a particular employee.  In other words, the term applies to positions, rather than to people.

Putting these pieces together and "reading individual words and phrases in the context of the entire legislative scheme," *Pinkney*, 501 Mich at 268, quoting *Madugula*, 496 Mich at 696, we hold that in the context of the Retirement Act, a "normal salary schedule" is a (1) written document (2) established by statute or approved by a reporting unit's governing body (3) that indicates the time and sequence of compensation, and (4) conforms to a norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee.

Plaintiffs argue—and the Court of Appeals suggested—that "normal salary schedule" is a term of art that refers *only* to employees operating under a CBA.  See *Batista (On Remand)*, ___ Mich App at ___ n 3; slip op at 6 n 3.  We disagree.  "Pursuant to MCL 8.3a, undefined statutory terms are to be given their plain and ordinary meaning, unless the undefined word or phrase is a term of art."  *People v Thompson*, 477 Mich 146, 151; 730 NW2d 708 (2007).[4]  Here, plaintiffs have failed to show that "normal salary schedule" should be construed inconsistently with the ordinary meaning detailed earlier.  Plaintiffs cite Michigan cases that have used the terms "salary schedule" and "job classification" in

---

[4] A "term of art" is "[a] word or phrase having a specific, precise meaning in a given specialty, apart from its general meaning in ordinary contexts."  *Black's Law Dictionary* (11th ed); accord MCL 8.3a ("All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.").

12

the context of CBAs.[5]  However, the fact that such terms *may be* and *often are* included in a CBA does *not* mean that the Legislature intended such terms to refer *only* to CBAs.  As noted earlier, other sources of Michigan law have used the term "salary schedule" outside the CBA context.[6]  Similarly, several statutes refer to a "job classification" without a clear reference to collective bargaining.  See, e.g., MCL 339.6115(1)(d)(*ii*) (referring to an individual who, "[w]hile serving in the armed forces, served as a plumber or in an

---

[5] Regarding "job classification," plaintiffs cite *Police Officers Ass'n of Mich v Grosse Pointe Farms*, 197 Mich App 730, 736-737; 496 NW2d 794 (1992), and *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 460-461; 875 NW2d 254 (2015).  But neither case held that "job classification" is only used in CBAs; rather, those cases held that a job classification is relevant to identifying a "community of interests" when creating a collective bargaining unit.  As for "salary schedule," plaintiffs point to *Kalamazoo City Ed Ass'n v Kalamazoo Pub Sch*, 406 Mich 579; 281 NW2d 454 (1979); *Ranta v Eaton Rapids Pub Sch Bd of Ed*, 271 Mich App 261; 721 NW2d 806 (2006); and *Martin v East Lansing Sch Dist*, 193 Mich App 166; 483 NW2d 656 (1992).  But nothing in those cases expressly or implicitly suggests that the relevant language contains terms of art.  *Kalamazoo City Ed Ass'n*, 406 Mich at 591, speaks of the "automatic salary progression schedule" that the particular parties in that case had incorporated into each CBA.  It does not use the term "normal salary schedule," nor does it suggest that that term has a particular meaning.  The other two cases simply speak of particular salary schedules in the labor disputes at issue in each case.

[6] It is also notable that the statute governing pensions for police officers and firefighters, MCL 38.556, specifically addresses collective bargaining when defining "average final compensation" for that group of public employees.  See MCL 38.556(1)(f).  Other sections of Chapter 38 also mention collective bargaining expressly.  See MCL 38.1615a (requiring that certain police officers who were "a bargaining unit employee covered by the state police defined benefit retirement plan" make certain contributions to a reserve fund); MCL 38.1624(4) (requiring that certain police officers who were hired "as a new bargaining unit employee" use a certain payment option).  The Legislature has thus demonstrated that it knows how and when to specify that pension requirements under Chapter 38 are limited to employees who work under a CBA.  The fact that the Legislature did not include such language in MCL 38.1303a(3) counsels against reading such a requirement into the statute.  Also, those statutes do not refer to a "normal salary schedule," which runs contrary to plaintiffs' argument that a normal salary schedule is intimately linked to CBAs.

13

equivalent job classification"); MCL 38.68c(13)(f)(2) (referring to a retirant who "performs work that is solely the duty, service, or work included in the job classification of nonexclusively represented employees"); MCL 45.554a(3) (directing an agency to maintain a publicly searchable website that includes "[t]he number of active transportation employees of the county road agency by job classification and wage rate"). In addition, though not as pertinent to whether "normal salary schedule" is a term of art in Michigan, other jurisdictions have used the term "salary schedule" outside of CBAs. See, e.g., *Buntin v Breathitt Co Bd of Ed*, 134 F3d 796, 798 n 2 (CA 6, 1998) (referring to salary schedules for nonunion school administrators); Fla Stat 1012.22(1)(c) (defining "salary schedule" as "the schedule or schedules used to provide the base salary for district school board personnel"); Okla Stat, tit 70, § 4517 (requiring that boards of education establish salary schedules, including for administrators); Wash Rev Code 28A.405.200 (indicating that "annual salary schedules . . . shall be the basis for salaries for all certified employees" in a school district).

Additional considerations suggest that "normal salary schedule" was not used as a term of art in the statute. It appears that no Michigan statute or court decision has defined the term. Cf. *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017) (recognizing that a term of art may be reflected in caselaw); see also *Perry v Kalamazoo State Hosp*, 404 Mich 205, 211; 273 NW2d 421 (1978). And the term is not included in *Black's Law Dictionary*. See *Wilcox v Wheatley*, 342 Mich App 551, 558; 995 NW2d 594 (2022) (indicating that a statutory term is unlikely to be a legal term of art if "*Black's Law Dictionary* does not define it"). In sum, there is nothing in MCL 38.1303a(3)(f), the Retirement Act broadly, other Michigan statutes, or Michigan caselaw to suggest that the Legislature intended

14

"normal salary schedule" to apply exclusively to public school employees working under a CBA.

Indeed, we have already held that the normal salary schedule limitation applies to all public school employees—regardless of whether their employment is subject to a CBA. See *Batista*, 511 Mich at 973. We agree with the Court of Appeals that the statute is clear that yearly salary increases are not considered compensation unless they are "provided by the normal salary schedule for the current job classification." MCL 38.1303a(3)(f).[7] The inescapable implication is that those who do not fall within the second sentence of that provision (i.e., employees in a job classification of three or more employees) must have a normal salary schedule in order to count salary increases as part of their "final average compensation." If only a CBA could include a "normal salary schedule" under MCL 38.1303a(3)(f), then employees working under personal employment contracts would never be entitled to credit for salary increases. Nothing in the statutory scheme indicates that the Legislature intended such a result, which further counsels against plaintiffs' argument that the phrase "normal salary schedule" is limited to terms in a CBA.

## B. APPLICATION

Having defined the term "normal salary schedule" as not being limited to CBAs, our analysis differs from that of the Court of Appeals in several key respects. We therefore

---

[7] Plaintiffs argue that MCL 38.1303a(f)(3) merely *governs* annual raises for all employees, but does not *apply* to all employees, such that anyone who is not employed under a CBA is essentially exempt from the limitations identified in that provision. But such an exemption is not reflected in the text or structure of the statute.

15

affirm the Court of Appeals' reversal of the Court of Claims' judgment, but we reverse its analysis as described in this section.

First, as our definition indicates, we hold that public school employees may have a normal salary schedule *regardless* of whether they are employed under a CBA or a personal employment contract. Nothing in the definition of "normal salary schedule" precludes application to nonbargaining positions. After all, many public employees in nonbargaining positions are paid according to a written list established or approved by a reporting unit's governing body that indicates the time and sequence of compensation and conforms to a regularized norm. Neither the statute nor our caselaw suggest that only employees working under a CBA are subject to a normal salary schedule.

Second, we vacate the Court of Appeals' holding that "plaintiff members work under personal employment contracts and are not subject to anything that could reasonably be construed or described as normal salary schedules for current job classifications." *Batista (On Remand)*, ___ Mich App at ___; slip op at 5-6. Although plaintiffs do not work under CBAs, the record is insufficient to determine at this juncture whether they are otherwise subject to a normal salary schedule as defined in this opinion.[8]

Third, we provide further clarity on how to interpret the second sentence of MCL 38.1303a(3)(f) in light of the definition of "normal salary schedule." Recall that the provision's second sentence states that "[i]n cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly

[8] The Court of Appeals did not address—and we do not either, in light of the lack of briefing on the issue—whether a governing authority in a reporting unit could adopt a retroactive normal salary schedule for years previously worked by a public school employee who was not subject to a normal salary schedule when the work occurred.

16

identical job classification in the reporting unit or in similar reporting units shall be used."

MCL 38.1303a(3)(f).[9]

Thus, for those job classifications, the statute authorizes ORS to look outside the relevant school district when necessary to find "the most nearly identical job classification in the reporting unit or in similar reporting units."[10] See also MCL 38.1303a(5) (requiring ORS to determine what counts as "remuneration" under the Retirement Act). Reading the statute this way is not only textually sound, but it also prevents the "unfairness produced" by the Court of Appeals' reading. *Batista (On Remand)*, ___ Mich App at ___; slip op at 6. Although administrators who fall within the ambit of the second sentence "must be shoehorned into an existing normal salary schedule," *id*. at ___; slip op at 6, the statute as interpreted in this opinion provides school districts and ORS with the flexibility to look inside and outside of administrators' school districts to find the most appropriate and comparable salary schedule to determine those administrators' pensions.

---

[9] " 'Reporting unit' means a public school district, intermediate school district, public school academy, tax supported community or junior college, or university, or an agency having employees on its payroll who are members of this retirement system." MCL 38.1307(3). Plaintiffs make a passing argument that MCL 38.1303a(3)(f) limits any reportable annual increase in compensation to the specific salary figure provided in the borrowed salary schedule rather than a percentage increase or dollar-amount increase. They emphasize the word "amount" at the beginning of that provision. See MCL 38.1303a(3)(f) ("Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by [the relevant salary schedule]."). But the salary schedule is used to determine the "increases" over the prior year's salary, which plainly is not limited to the specific salary figure.

[10] In addition, nothing precludes school districts from looking to a "normal salary schedule" from other school districts when adopting or approving a "normal salary schedule" for a particular "job classification."

17

## IV. CONCLUSION

For the reasons set forth in this opinion, we affirm the Court of Appeals' reversal of the Court of Claims' judgment but reverse the analysis of the Court of Appeals as described in the previous section. Finally, we vacate the Court of Appeals' holding that plaintiffs are not subject to normal salary schedules for current job classifications. We do not decide whether plaintiffs are subject to a "normal salary schedule" as defined in this opinion, and instead we remand to the Court of Claims for further proceedings consistent with this opinion.

Elizabeth M. Welch
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh

# STATE OF MICHIGAN

## SUPREME COURT

PATRICIA BATISTA, DAVID BRITTEN,
TIMOTHY DONAHUE, AARON
GAFFNEY, JOHN HEWITT, RONALD
KOEHLER, AMY SWANTEK, CHRIS
THOMSON, and MICHIGAN
ASSOCIATION OF SUPERINTENDENTS
AND ADMINISTRATORS,

        Plaintiffs-Appellants,

v                                     No. 166305

OFFICE OF RETIREMENT SERVICES,
MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC EMPLOYEES
RETIREMENT SYSTEM BOARD,
PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD
MEMBERS, and EXECUTIVE DIRECTOR
OF RETIREMENT SERVICES,

        Defendants-Appellees.

_____

CLEMENT, C.J. (*concurring dubitante*).

I concur in the majority opinion, though I have some doubts regarding its analysis. Namely, I read "normal salary schedule" in MCL 38.1303a(3)(f) as one phrase, which should ideally be defined in its entirety. I am not completely comfortable with defining "normal," "salary," and "schedule" in isolation, and then putting the pieces together to define the phrase "normal salary schedule." Additionally, though the majority cites various sources apparently referring to salary schedules in a context not involving a collective

bargaining agreement (CBA), I am hesitant to rely on this authority.[1]  The out-of-state statutes and case are in a very similar, if not identical, context as our own statute, all involving school employees.  None of the sources uses the whole phrase "normal salary schedule," but rather just "salary schedule[s]" or "annual salary schedule."  While the Michigan sources speak of salary schedules for different kinds of employees and the out-of-state sources speak of salary schedules for school employees generally, including for personnel and administrators, the sources are not completely clear that the employees to which the salary schedule applied do not have a CBA.  I simply do not know enough about the use of CBAs for various kinds of employees in order to be confident that the examples the majority cites are certainly examples of normal salary schedules being used outside the CBA context.

Nevertheless, I see merit in the majority opinion.  I can locate no useful definitions of "normal salary schedule" as one phrase taken as a whole.  Assuming that "normal," "salary," and "schedule" can be defined individually and then combined to create a

---

[1] See *ante* at 11, citing *Bischoff v Wayne Co*, 320 Mich 376, 392; 31 NW2d 798 (1948) (citing a civil service regulation referring to a "salary schedule" created by the Civil Service Commission); *Bd of Control of Mich State Prison v Auditor General*, 197 Mich 377, 382; 163 NW 921 (1917) (referring to a "salary schedule" fixed by statute); *Robins v Wayne Co*, 335 Mich 41, 43; 55 NW2d 166 (1952) (referring to "the salary schedule and salary plan of Wayne county adopted by the Wayne county board of supervisors"); MCL 600.8273, as added by 1980 PA 438 (tying certain employees' compensation to "a classification and salary schedule developed by the state judicial council").  See also *ante* at 14, citing *Buntin v Breathitt Co Bd of Ed*, 134 F3d 796, 798 n 2 (CA 6, 1998) (referring to salary schedules for nonunion school administrators); Fla Stat 1012.22(1)(c) (defining "salary schedule" as "the schedule or schedules used to provide the base salary for district school board personnel"); Okla Stat, tit 70, § 4517 (requiring that boards of education establish salary schedules, including for administrators); Wash Rev Code 28A.405.200 (indicating that "annual salary schedules . . . shall be the basis for salaries for all certified employees" in a school district).

definition for "normal salary schedule," the majority's statutory interpretation is persuasive. Additionally, even though I am not completely convinced that we have found an example of "normal salary schedule" used outside the CBA context, I wholeheartedly agree with the majority that finding no such example does not necessarily indicate that "normal salary schedule" can be used only in the CBA context.[2] Tellingly, I have found no definition of "normal salary schedule" explicitly saying that the term is inextricably linked to a CBA.

Finally and importantly, the majority opinion provides much-needed guidance on this important issue of calculating the retirement allowance for public school employees under personal employment contracts. I would not perpetuate confusion and unfairness when I am by no means certain that the majority is wrong. For these reasons, despite my lingering questions, I concur with the majority. At the same time, I encourage the Legislature to amend the statute in order to clarify the definition of "normal salary schedule," particularly whether a normal salary schedule can exist outside the CBA context.

Elizabeth T. Clement
Kyra H. Bolden

---

[2] See *ante* at 13 ("However, the fact that such terms *may be* and *often are* included in a CBA does *not* mean that the Legislature intended such terms to refer *only* to CBAs.").

3

# STATE OF MICHIGAN

## SUPREME COURT

PATRICIA BATISTA, DAVID BRITTEN,
TIMOTHY DONAHUE, AARON
GAFFNEY, JOHN HEWITT, RONALD
KOEHLER, AMY SWANTEK, CHRIS
THOMSON, and MICHIGAN
ASSOCIATION OF SUPERINTENDENTS
AND ADMINISTRATORS,

        Plaintiffs-Appellants,

v                           No. 166305

OFFICE OF RETIREMENT SERVICES,
MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC EMPLOYEES
RETIREMENT SYSTEM BOARD,
PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD
MEMBERS, and EXECUTIVE DIRECTOR
OF RETIREMENT SERVICES,

        Defendants-Appellants.

_____

CAVANAGH, J. (*concurring*).

I concur in full with the majority opinion. I write separately to summarize the current state of the public-school employees' retirement system and to urge the Legislature to revisit this scheme. Most importantly, I emphasize that it is yet to be determined how our decisions in this case will affect the retirement allowances of public-school employees who previously worked without an applicable "normal salary schedule." Given the change in the status quo wrought by this litigation, many public-school employees now face

uncertainty regarding their retirement pensions. Legislative guidance could help to ensure that the retirement allowances of public-school employees are consistent with the reasonable expectation that their pensions would fairly reflect compensation earned during their careers.

## I. CURRENT STATE OF AFFAIRS

As the majority explains, a public-school employee's[1] retirement allowance is determined in part by their compensation earned, MCL 38.1384(1); MCL 38.1303a(1), which generally includes their "salary and wages," MCL 38.1303a(2). However, an employee only receives credit toward their retirement allowance[2] for yearly salary increases to the extent these increases are consistent with a "normal salary schedule." See MCL 38.1303a(3)(f). For many years, the Office of Retirement Services (ORS) generally used the "normal salary schedule" provided in a collective-bargaining agreement (CBA) for any employee who worked pursuant to such an agreement. By contrast, ORS created and applied its own "normal salary increase" (NSI) schedules for any employee who worked pursuant to a personal employment contract. Last year, this Court affirmed the Court of Appeals' holding that ORS "lacks the authority to create and implement its own

---

[1] Only a public-school employee who fits the definition of "member" under MCL 38.1305(1) receives a retirement allowance. In this opinion, I use interchangeably "member," "public-school employee," and "employee" to refer to an individual who is entitled to a retirement allowance.

[2] For ease of reference, I refer in this opinion to credit toward an employee's retirement allowance as "retirement credit" or "credit."

[NSI] schedules." *Batista v Office of Retirement Servs*, 511 Mich 973, 973 (2023).[3] The critical question now is how the retirement system will function without these ORS-created NSI schedules.

Read together, the decisions from this Court in this case establish the following:

1. *All* public-school employees—whether they work under CBAs or personal employment contracts—only receive retirement credit for yearly salary increases to the extent those increases are consistent with a "normal salary schedule." MCL 38.1303a(3)(f).[4]

2. A "normal salary schedule" is a "(1) written document (2) established by statute or approved by a reporting unit's governing body (3) that indicates the time and sequence of compensation, and (4) conforms to a norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee."[5] While a normal salary schedule may be found in a CBA, it is not *limited exclusively* to a term in a CBA.[6]

3. ORS lacks the authority to create and implement NSI schedules to calculate the pensions of any public-school employees, including those who work under personal employment contracts.[7]

4. For employees in a job classification with *three or more* members, credit for yearly salary increases is determined by the normal salary schedule for the job classification in which they work. MCL 38.1303a(3)(f). If a job classification with three or more members does not have a normal salary schedule, employees in that job classification do not receive *any* credit for yearly salary increases.[8]

---

[3] Nothing in this Court's holdings in this case affects the use of a "normal salary schedule" in a CBA for employees in a job classification with three or more members.

[4] *Batista*, 511 Mich at 973; *ante* at 9, 15.

[5] *Ante* at 2, 12.

[6] *Ante* at 12-15.

[7] *Batista*, 511 Mich at 973.

[8] *Ante* at 9, 15; see also *Batista v Office of Retirement Servs (On Remand)*, ___ Mich App___, ___; ___ NW2d ___ (2023); slip op at 5-6.

5. For employees in a job classification with *fewer than three* members, credit for yearly salary increases *must* be determined on the basis of "the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units . . . ." MCL 38.1303a(3)(f).[9] In effect, this means it is impossible for a job classification with fewer than three members to have its own normal salary schedule, and salary increases for any employee in such a job classification must be compared to *another* job classification's normal salary schedule.

Importantly, the Court has not addressed how this change in the status quo applies to work that occurred before these decisions were rendered. For example, the Court has not addressed "whether a governing authority in a reporting unit could adopt a retroactive normal salary schedule for years previously worked by a public school employee who was not subject to a normal salary schedule when the work occurred." *Ante* at 16 n 8. Relatedly, the Court has not addressed whether the now-invalidated ORS-created NSI schedules must be disregarded for employees who are currently receiving a retirement allowance that was calculated on the basis of those schedules. While such questions remain, these issues have not been raised by the parties or decided below, so they are not ripe for our review.

Nonetheless, these lingering issues are likely to be important going forward, especially to public-school employees with reasonable expectations that their pensions will reflect increases in compensation received during their careers. Everyone involved reasonably relied on the validity of the ORS-created NSI schedules for many years. In light of that reliance, it is possible that many reporting units' governing bodies may not have established or approved normal salary schedules for job classifications with three or

---

[9] *Ante* at 16-17; see also *Batista (On Remand)*, ___ Mich App at ___; slip op at 6.

4

more employees who do not work pursuant to a CBA.[10]  Absent legislative intervention, these important issues—and likely others—remain to be addressed first by the parties on the ground and, if necessary, in subsequent litigation.

## II.  LEGISLATIVE ACTION

I join the Court of Appeals and my colleagues in imploring the Legislature to consider amending the statutory scheme.  Among other things, I urge the Legislature to assess: (1) the appropriate definition of "normal salary schedule," (2) how to calculate the retirement allowances for employees who relied on the now-invalidated NSI schedules and did not have an applicable normal salary schedule during prior years of employment, and (3)  MCL 38.1303a(3)(f)'s requirement that retirement credit for employees in a job classification with fewer than three members be determined on the basis of a normal salary schedule created for a *different* job classification.

I question whether the statute as currently written is unintentionally inconsistent with the Legislature's broad intent, which I suspect was that all employees' retirement credit would be subject to a normal salary schedule limitation and that *no* employees would be *deprived entirely* of credit for yearly salary increases.  Yet it seems possible under the current scheme that some public-school employees could receive no credit for yearly salary increases.  At minimum, many public-school employees are now left with uncertainty regarding their retirement allowances.  This undesirable state of affairs is partially attributable to the fact that there is no statutory definition of "normal salary schedule" and

---

[10] Notably, nothing in the Public School Employees Retirement Act, MCL 38.1301 *et seq*., currently *requires* a reporting unit's governing body to establish or approve a "normal salary schedule" for such job classifications.

5

that there is minimal authority using that precise phrase in Michigan or elsewhere. This lack of guidance created understandable uncertainty regarding what "normal salary schedule" means.[11]

The Court today settles the question by defining "normal salary schedule," and I agree with the Court's decision to do so. Defining that phrase not only ensures the proper resolution of this case but also provides broader guidance on how the scheme should function without the ORS-created NSI schedules. When interpreting a statute, our role is not to make policy decisions but rather to ascertain and give effect to the Legislature's intent. As this case illustrates, this is not always a straightforward task. As the highest court in Michigan, it is our responsibility to have the final word on the proper interpretation of Michigan law, especially where an issue is difficult and jurisprudentially significant.[12]

---

[11] This uncertainty is reflected by ORS' prior practice of creating its own NSI schedules and in the different interpretations of "normal salary schedule" offered in this litigation by the Court of Appeals, the parties, and the various amici.

[12] I agree entirely with Justice ZAHRA that "[t]he lower courts' role in developing Michigan's jurisprudence is critical to this Court's functioning." *Post* at 8 n 11; see also *In re Certified Questions from the United States Dist Court, Western Dist of Mich*, 505 Mich 1159, 1162 (2020) (CAVANAGH, J., concurring) (highlighting the "immense value in the meaningful analysis and perspective offered by our intermediate appellate court"). However, I disagree with his contention that it is premature for this Court to define "normal salary schedule." In its initial review of this case, the Court of Appeals issued a published decision that defined the phrase "normal salary schedule" as limited to a term in a CBA. See *Batista v Office of Retirement Servs*, 338 Mich App 340, 358; 980 NW2d 107 (2021) ("We find it abundantly clear from the Legislature's references to 'the' normal salary schedule and 'the' current job classification that the Legislature was necessarily alluding to schedules and classifications that were familiar to school personnel and already in place in the particular contextual setting of collective bargaining."), affirmed in part, reversed in part, and vacated in part 511 Mich 973 (2023). This Court vacated that holding and, while the Court of Appeals on remand declined to definitively resolve the issue, it again suggested in another published decision that "we remain of the belief that the Legislature was speaking of schedules in collective-bargaining agreements." *Batista (On Remand)*,

6

In doing so, we endeavor "to apply the statutory language *as best as possible* as written . . . ." *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 171; 615 NW2d 702 (2000) (emphasis added). I believe that the Court adopts the best interpretation of "normal salary schedule" given the applicable statutory language, pertinent caselaw, and statutory context. That said, I agree with Chief Justice CLEMENT that the legislative intent on this point is not entirely clear, and I join her in inviting the Legislature to examine the issue and amend the statute if it believes we misunderstood its intent or if it wishes to make a different policy choice regarding how to calculate a member's retirement allowance.

Moreover, as discussed earlier in this opinion, there was widespread reliance for many years on the now-invalidated ORS-created NSI schedules. Public-school employees without a CBA reasonably relied on the assurance that they would receive retirement credit for salary increases to the extent they were consistent with those schedules. Relatedly, it seems possible that reporting units' governing bodies did not recognize that it was necessary to establish or approve a normal salary schedule in order for these employees to receive retirement credit for salary increases, and therefore there may be employees who did not have an applicable normal salary schedule during prior years of work. Absent any remedial action, these employees may not be entitled to retirement credit for yearly salary increases, which is not what the Legislature likely intended. Given the Legislature's primacy in matters involving the state's fiscal and public policy, explicit legislative

___ Mich App at ___; slip op at 6 n 3. Accordingly, the Court of Appeals has opined on the issue the Court resolves in this case. I also note that this Court explicitly directed the parties to brief the proper definition of "normal salary schedule," *Batista v Office of Retirement Servs*, 513 Mich 1008 (2024), and multiple amicus briefs filed in this Court also addressed that issue.

7

guidance on how to calculate the retirement allowances of such employees would be beneficial.

Finally, I encourage the Legislature to assess MCL 38.1303a(3)(f)'s treatment of employees in a job classification with fewer than three members. The statute currently *mandates* the use of a normal salary schedule created for a *different* job classification when assessing the retirement allowances for these employees. As the Court of Appeals remarked, "[t]he Legislature appears to have assumed that a member falling within the parameters of the second sentence of MCL 38.1303a(3)(f) [i.e., a member in a job classification with fewer than three members] would not be covered by his or her own 'normal salary schedule.' " *Batista* (*On Remand*), ___ Mich App at ___; slip op at 6. But it is not readily apparent why a salary schedule could not be created and used to determine those members' retirement credit for yearly salary increases. Such an approach may be preferable to the current one, which requires a comparison to a salary schedule that is not tailored to the specific job classification or reporting unit at issue. As the majority recognizes, the statutory scheme "provides school districts and ORS with the flexibility to look inside and outside of administrators' school districts to find the most appropriate and comparable salary schedule to determine those administrators' pensions." *Ante* at 17. Nonetheless, any comparison is likely to be imperfect.

## III. CONCLUSION

I join in full the majority opinion, which I believe faithfully interprets the applicable statutes as written. However, I recognize that the Court's decisions in this case alter the status quo and create grave uncertainty for many public-school employees. My hope is

8

that the Legislature will take swift action to undertake a comprehensive reassessment of this scheme in light of our holdings in order to provide clarity and ensure the fair treatment of public-school employees.

Megan K. Cavanagh
Elizabeth M. Welch

9

# STATE OF MICHIGAN

## SUPREME COURT

PATRICIA BATISTA, DAVID BRITTEN,
TIMOTHY DONAHUE, AARON
GAFFNEY, JOHN HEWITT, RONALD
KOEHLER, AMY SWANTEK, CHRIS
THOMSON, and MICHIGAN
ASSOCIATION OF SUPERINTENDENTS
AND ADMINISTRATORS,

        Plaintiffs-Appellants,

v                            No. 166305

OFFICE OF RETIREMENT SERVICES,
MICHIGAN PUBLIC SCHOOL
EMPLOYEES RETIREMENT SYSTEM,
MICHIGAN PUBLIC EMPLOYEES
RETIREMENT SYSTEM BOARD,
PUBLIC SCHOOL EMPLOYEES
RETIREMENT SYSTEM BOARD
MEMBERS, and EXECUTIVE DIRECTOR
OF RETIREMENT SERVICES,

        Defendants-Appellees.

_____

ZAHRA, J. (*dissenting*).

This case pertains to MCL 38.1303a's definition of "compensation." More specifically, at issue is whether certain public school employees may include their year-to-year pay increases when calculating the basis of their pensions, or whether their year-to-year pay increases are excluded from the basis of their pension by MCL 38.1303a(3)(f). The majority opinion affirms aspects of the Court of Appeals' opinion but then goes beyond the Court of Appeals' holding to define the phrase "normal salary schedule." But

MCL 38.1303a(3)(f) is poorly drafted and perplexingly complex. Interpreting the phrase "normal salary schedule" is thus a difficult task, especially when done without the benefit of lower-court intervention that undoubtedly would develop the issue.[1] Besides, I am not convinced that this Court needs to define the phrase "normal salary schedule" at this juncture.[2] Accordingly, I dissent from the majority opinion and would remand this matter to the Court of Appeals to define that phrase, which would simultaneously afford the Legislature the opportunity to amend MCL 38.1303a(3)(f) and provide clarity to this portion of the statute if it wishes to do so.

---

[1] The issue addressed in the majority opinion is one of statutory interpretation. It is a quintessential role of this Court to provide meaning to the law enacted by our Legislature. Admittedly, some statutes may be interpreted by this Court without legal development in the lower courts. This is not such a case. The phrase "normal salary schedule" appears to have its origins in collective-bargaining agreements (CBAs), something the Legislature knew when it enacted MCL 38.1303a(3)(f). Accordingly, as advocated by the plaintiffs, the phrase may be a term of art entitled to an interpretation not found in lay dictionaries.

[2] Plaintiffs' amended complaint alleges that defendants violated the Public School Employees Retirement Act, MCL 38.1301 *et seq.*; Article 9, § 24 of the Michigan Constitution; the Administrative Procedures Act, MCL 24.201 *et seq.*; and the state and federal right to due process by creating and implementing salary increase schedules. Throughout this litigation, plaintiffs and defendants agreed that plaintiffs were not subject to the "normal salary schedule." Therefore, no court ever needed to define "normal salary schedule." This Court's order remanding to the Court of Appeals raised an irrelevant issue, "whether the phrase "normal salary schedule" in MCL 38.1303a(3)(f) refers only to a provision contained in a collective-bargaining agreement." The answer to that question is irrelevant, however, because regardless of whether the phrase "normal salary schedule" applies only in a collective-bargaining agreement, only in a personal contract, or in both, plaintiffs are undisputedly not subject to normal salary schedules. Accordingly, while the definition of the phrase "normal salary schedule" may someday be important, it is not important to this litigation. This Court errs by rushing to answer a question that is not necessary to the outcome of this case, and it compounds its error by doing so without the benefit of the lower courts' review.

2

## I. APPLICABLE LAW AND PROCEDURAL HISTORY

MCL 38.1301 *et seq.* is the Public School Employees Retirement Act. MCL 38.1303a(1) provides that "[e]xcept as otherwise provided in this act, 'compensation' means the remuneration earned by a member for service performed as a public school employee." Subsection (2) states that "[c]ompensation includes salary and wages" and specifies eight detailed categories of pay that are included in the definition of "compensation." Meanwhile, Subsection (3) details six categories of pay that are *excluded* from the meaning of "compensation." At issue is the sixth exclusion, which provides:

> Compensation does not include any of the following:
>
> * * *
>
> (f) Compensation in excess of an amount over the level of compensation reported for the preceding year except increases provided by the normal salary schedule for the current job classification. In cases where the current job classification in the reporting unit has less than 3 members, the normal salary schedule for the most nearly identical job classification in the reporting unit or in similar reporting units shall be used.[3]

Previously, the ORS created salary schedules and used those to calculate plaintiffs' benefits. This Court ended that practice when, in a prior appeal in this case, we held that the ORS lacks authority to create salary schedules.[4] But we remanded this case to the Court of Appeals "to address how MCL 38.1303a(3)(f) applies to public school employees who do not work pursuant to collective bargaining agreements [CBAs] and to further

---

[3] MCL 38.1303a(3).

[4] See *Batista v Office of Retirement Servs*, 511 Mich 973, 973 (2023) ("We AFFIRM the Court of Appeals' holding that the [ORS] lacks the authority to create and implement its own normal salary increase schedules.").

address how this holding affects plaintiffs' claims in this case."[5]  On remand, the Court of Appeals held that the first sentence of MCL 38.1303a(3)(f) applies to employees who are subject to "normal salary schedules" and work under CBAs, while the second sentence of MCL 38.1303a(3)(f) applies to said employees regardless of whether they work under CBAs or personal employment contracts.  The Court of Appeals did not define "normal salary schedules" because "[t]he current litigation solely concerns the validity of ORS's creation of [normal salary increase (NSI)] schedules, and as we ruled earlier, the ORS lacked statutory authority under the Retirement Act to create and implement the NSI schedules, which ruling the Supreme Court affirmed.  Accordingly, there is no need to address plaintiffs' additional arguments."[6]  As noted earlier, the parties do not dispute that plaintiffs do not work under "normal salary schedules."  Plaintiffs sought leave to appeal the Court of Appeals' judgment, and we ordered oral argument on the application.  *Batista v Office of Retirement Servs*, 513 Mich 1008 (2024).

## II.  ANALYSIS

The majority opinion goes beyond the holding of the Court of Appeals to define the phrase "normal salary schedule," which—until now—has not been defined by any Michigan court.[7]

---

[5] *Id*.

[6] *Batista v Office of Retirement Servs (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 353832); slip op at 6.

[7] The majority opinion denies that it goes beyond the Court of Appeals' holding to define the phrase "normal salary schedule" by claiming that the Court of Appeals "interpreted" that phrase in its initial, *now vacated* opinion when it said:

4

We find it abundantly clear from the Legislature's references to 'the' normal salary schedule and 'the' current job classification that the Legislature was necessarily alluding to schedules and classifications that were familiar to school personnel and already in place in the particular contextual setting of collective bargaining. The references to 'normal salary schedule' for a 'job classification' plainly pertain to salary schedules contained in collective-bargaining agreements.

I suspect that no one would be more surprised than the members of the Court of Appeals panel in this case to learn that a majority of this Court is treating their discussion of the definite article "the" that preceded the relevant phrase "normal salary schedule" as interpreting that entire phrase. Indeed, it is obvious that the Court of Appeals is discussing MCL 38.1303(f)(3)'s use of the word "the" *because that is the key word it placed in quotation marks*. A definition is "a statement of the meaning of a word . . . ." *Merriam-Webster's Collegiate Dictionary* (11th ed). It is confounding to me that the majority opinion treats the Court of Appeals' discussion of the word "the" as though it defined the phrase "normal salary schedule."

Next, the majority opinion claims that "[w]e . . . granted leave, directing the parties to address the meaning of the phrase 'normal salary schedule' " and that "the meaning of the phrase has long been a focus of this litigation . . . ." This is wrong twice over. First, this Court directed the parties to address "(1) whether the phrase 'normal salary schedule' in MCL 38.1303a(3)(f) refers only to a provision contained in a collective-bargaining agreement; and (2) if not, from what other source may a 'normal salary schedule' be derived." *Batista*, 513 Mich at 1008. We did not direct them in simple terms to define the phrase "normal salary schedule," and while defining that phrase *may* be necessary to determine whether it applies in CBAs only, CBAs and private contracts, or private contracts only, that is an issue we should leave for the lower courts to first address. In turn, this undermines the majority opinion's contention that we received "full briefing on the issue." Plaintiffs devoted one page (out of 43) to defining the phrase; meanwhile, defendants devoted only one paragraph of their 37-page response to defining the phrase. Because we received almost no relevant or helpful briefing on the definition of "normal salary schedule" and no lower court ever defined the phrase, I would not define it now. Second, it is duplicitous to argue that a phrase that no lower court has ever defined "has long been a focus of this litigation." Indeed, on remand, the Court of Appeals held that "our Supreme Court upheld our *central* holding" "that the ORS lacked the authority to create and implement its own NSI schedules." *Batista (On Remand)*, ___ Mich App at ___; slip op at 2. Besides, the parties have agreed from the very beginning that plaintiffs do not work under "normal salary schedules"; therefore, that irrelevant phrase's definition cannot be the focus of this litigation. See paragraph 141 of the first amended complaint, in which plaintiffs complained of being treated differently "than other school employees

5

Given the complexity of the issue presented, I question the Court's decision to dive headfirst into a final, authoritative interpretation without the benefit of the lower courts' wisdom. As Chief Justice CLEMENT's concurrence *dubitante* aptly points out, she (and, I would argue, the entire Court) "simply do[es] not know enough about the use of CBAs for various kinds of employees in order to be confident that the examples the majority cites are certainly examples of normal salary schedules being used outside the CBA context." The use of CBAs for various kinds of employees and the meaning of "normal salary schedule" inside and outside the context of CBAs are questions that ought to be developed by the lower courts so that this Court's first holding on the issue is informed, necessary, and authoritative, as opposed to merely authoritative.

---

that are actually paid on a normal salary schedule"; see also page 29 of plaintiffs' brief on first appeal in the Court of Appeals, arguing that "absent [defendants'] intervention, there is no 'normal salary schedule' for [plaintiffs] and similarly-situated individuals." Meanwhile, on page 16 of their brief on first appeal in the Court of Appeals, defendants argued that "[t]he Retirement Act expressly limits the crediting of increases in 'compensation' to those that fall within a normal salary schedule," so plaintiffs, who do not fall within a normal salary schedule, may not credit increases in their compensation. The majority opinion's statement that the meaning of the phrase "normal salary schedule" "has long been a focus of this litigation" thus ignores hundreds of pages of the parties' briefs that state the contrary and the lower courts' holdings that did not consider the phrase enough of a "focus" to this litigation to even define it. The majority opinion concludes by explaining that "there is no rule or compelling reason to delay resolution of this issue." The majority misses the point of this dissent, which is not that the Court cannot define the phrase "normal salary schedule" without waiting for the full wisdom of the lower courts, but simply that it is imprudent and ill-judged to do so. In sum, this Court should wait for the lower courts to *actually define* the phrase "normal salary schedule" before offering an authoritative interpretation. And while these proceedings develop on remand, the Legislature just might answer the call of this Court to define the phrase "normal salary schedule."

The need for lower-court development of this legal issue is evident from the definition of "normal salary schedule" cobbled together in the majority opinion, which defines "normal salary schedule" by looking at the meaning of each word individually:

> One contextually appropriate definition of "normal," for purposes of MCL 38.1303a(3)(f), is "according with, constituting, or not deviating from a norm, rule, or principle: REGULAR." *Merriam-Webster's Collegiate Dictionary* (8th ed). That same dictionary defines "salary" as "fixed compensation paid regularly for services." *Id*. Finally, a "schedule" can be "a written document," "a statement of supplementary details appended to a legal or legislative document," "a written or printed list," or a "timetable." *Id*.

The majority opinion then concludes that the phrase "normal salary schedule" means a "(1) written document (2) established by statute or approved by a reporting unit's governing body (3) that indicates the time and sequence of compensation, and (4) conforms to a regular norm, rule, or principle—i.e., it applies to a generally applicable job classification rather than to a specific employee."

This definition raises several concerns.[8] One issue with the definition of "normal salary schedule" found in the majority opinion is that it does not include the full definition of "salary." The cited dictionary defines "salary" as "*fixed* compensation *paid regularly* for services."[9] In the context of "normal salary schedule," however, the majority opinion defines "salary" as merely "compensation." The majority opinion does not explain why the definition of "normal salary schedule" does not require that the compensation be

---

[8] I do not aspire to produce an exhaustive list of the many latent ways in which the majority opinion's ad hoc definition of "normal salary schedule" might go awry. Instead, I merely provide a few examples of patent flaws in the majority opinion's definition. These examples show why we ought not rush to judgment in this case.

[9] *Merriam-Webster's Collegiate Dictionary* (8th ed) (emphasis added).

"fixed" or "paid regularly," as provided in the cited dictionary. The definition provided in the majority opinion also selects two definitions of "schedule" without explaining why two definitions are needed for one word. The Court holds that for something to qualify as a "normal salary schedule" it must be both "written" and "indicate[] the time and sequence of each operation," which are alternative definitions of "schedule."[10] I am left to question why two definitions for the same word are needed, why one definition is insufficient, and why three or more is too many. Perhaps the practical wisdom of the lower courts might explain why two definitions, no more and no fewer, are needed. But we simply do not have the benefit of a developed lower-court record on this point. Last, the majority opinion does not explain why a "normal salary schedule" must be "established by statute or approved by a reporting unit's governing body." It is logical to assume that only a "normal salary schedule" that is approved by an authoritative body will govern school administrator's pensions, but the majority opinion fails to explain where that requirement is found in the three-word phrase "normal salary schedule." In sum, the definition of "normal salary schedule" provided in the majority opinion is rife with traps and flaws that are both seen and unseen. Given the complexity of this issue, I would defer the defining of this critical phrase to the lower courts for further jurisprudential development rather than issuing an improvised, undeveloped definition, like the Court does today.[11]

---

[10] *Id*.

[11] The lower courts' role in developing Michigan's jurisprudence is critical to this Court's functioning. Lower courts' development of a particular legal issue enables us to fully consider that issue before weighing in with a final, authoritative interpretation. We should

8

That a majority of my colleagues urge the Legislature to provide clarity as to the proper interpretation and application of MCL 38.1301a(3)(f) bolsters my belief that we should not rush to define "normal salary schedule" at this juncture. In her concurrence, Chief Justice CLEMENT, joined by Justice BOLDEN, "encourage[s] the Legislature to amend the statute in order to clarify the definition of 'normal salary schedule . . . .' " And Justice CAVANAGH, joined by Justice WELCH, "urge[s] the Legislature to revisit this [statutory] scheme," concluding, "My hope is that the Legislature will take swift action to undertake a comprehensive reassessment of this scheme in light of our holdings in order to provide clarity and ensure the fair treatment of public-school employees."[12] It is apparent to me—in the same way it is apparent to a majority of this Court—that MCL 38.1303a(3)(f) contains flaws. I would therefore defer offering an authoritative construction of "normal salary schedule" until *after* the Legislature has had an opportunity to amend MCL 38.1303a(3)(f) or—if the Legislature declines to amend MCL 38.1303a(3)(f)—until the lower courts have had a reason and opportunity to develop the issue.

In conclusion, I am not at all certain that the definition of "normal salary schedule" adopted in the majority opinion is correct. The Court errs by improvidently offering a definitive interpretation of "normal salary schedule" without directing the lower courts

---

not abandon one of this state's greatest jurisprudential tools—the multitiered court system—absent a pressing need. Here, the majority opinion does not identify any such need.

[12] Below, the Court of Appeals "implore[d] the Legislature to address the patent flaws in the statutory language [of MCL 38.1303a(3)(f)]." *Batista (On Remand)*, ___ Mich App at ___; slip op at 6.

9

to develop the issue.  Allowing the lower courts to weigh in first would also afford the Legislature an opportunity to amend MCL 38.1303a(3)(f), as requested by a majority of the Court.  Accordingly, I dissent.

Brian K. Zahra